John Elvin MALLARD, Appellant,

v.

STATE of Texas, State.

No. 2–82–158–CR.

Court of Appeals of Texas,
Fort Worth.

Nov. 2, 1983.

and Sec. 3.01 through 3.04 Tex.Penal Code Ann. (Vernon 1974).

Jack V. Strickland, Fort Worth, for appellant.

Tim Curry, Dist. Atty., and Chris Marshall, Asst. Dist. Atty., Fort Worth, for the State.

Before JORDAN, ASHWORTH and BURDOCK, JJ.

## OPINION

JORDAN, Justice.

Appellant was convicted by a jury on June 23, 1982 of the offense of murder of one Gary Wilson, a convenience store clerk, on September 18, 1980. The jury also answered "true" to an enhancement paragraph in the indictment alleging that in 1973 appellant was convicted of the offense of robbery with a firearm, and sentenced him to ninety-nine (99) years imprisonment.

Fifteen grounds of error on the part of the trial court are alleged in appellant's brief, and they are summarized as follows: grounds one and two assert error in the refusal of the trial court to compel the State to reveal the identity of an informant and the informant's source of information which led to the arrest, indictment, and conviction of appellant; grounds of error three and four complain of the refusal of the trial court to dismiss the indictment because of an alleged violation of the Speedy Trial Act and because of the State's use of "crucial" evidence gathered after their announcement of ready in violation of the Due Process Clause of the Fourteenth Amendment and Tex.Code Crim.Proc.Ann. art. 38.23 (Vernon 1979); grounds of error five, six and seven complain of the trial court's admission of a letter written by appellant from his Tarrant County jail cell to the district attorney's office, admitting his crime, in alleged violation of his constitutional rights against self-incrimination and of assistance of counsel, and the alleged failure of the court to charge the jury on the voluntariness of the letter; the eighth ground of error complains of the trial court's failure to suppress introduction of a weapon in violation of the Due Process clause of the Fourteenth Amendment to the United States Constitution, Tex. Const. art. I, sec. 10, and Tex.Code Crim.Proc.Ann. art. 38.23; grounds of error nine, ten, eleven, twelve, and thirteen complain of alleged errors in the admission of pretrial and in-court identification of appellant in violation

of his constitutional rights, and the failure of the court to charge the jury on the "lawfulness" of the pretrial and in-court identification; ground of error fourteen asserts error in the failure of the trial court to grant a new trial on alleged jury misconduct involving the mention of parole on the part of a jury member; and ground of error fifteen contends that the trial court erred by refusing to grant a new trial on the basis of alleged newly discovered evidence relating to the informant and the informant's source of information.

We have considered and will discuss each of these grounds of error, although some of them will be considered together.

We affirm the judgment of the trial court.

The trial of this cause took approximately five weeks and the record consists of the transcript and thirteen volumes of statements of fact. All of the following facts which we will recite are gleaned from this long record, and the basic facts are for the most part undisputed. Appellant's only defense was that he did not commit the robbery and the murder.

Shortly after midnight on September 18, 1980, two employees of the Southland Corporation, Gary Wilson and Earl Choate, Jr., were on duty at the 7-Eleven store on Pennsylvania Avenue, near Eighth Avenue in Fort Worth, when a man later identified by several witnesses as appellant, John Elvin Mallard, entered the store. At the time, Choate got a good look at appellant, and then walked toward the locker section at the back of the store. As he was returning from that part of the store, he heard appellant call Gary Wilson, the other employee, a vile name and heard a gunshot. Choate, after seeing what was transpiring and hearing the gunshot, ran out the back of the store to get help. Upon returning to the store a few minutes later, Choate found the cash register drawer out on top of the counter and saw Gary Wilson lying on the floor talking on the telephone. He had been shot in the chest by a small caliber weapon and died of his wounds later that day.

According to the testimony of Linda Sue Lee, appellant's girlfriend, and her cousin, Edward Lee Jackson, these two were riding with appellant in Jackson's pickup truck on the evening of September 17, 1980 and the early morning of September 18, 1980, and were on their way to a relative's house, when appellant told Jackson to stop the truck at the 7-Eleven Store on Pennsylvania Avenue. Jackson parked the pickup two blocks from the store and waited for appellant, who walked to the store. While waiting in the truck, Linda Sue Lee and Edward Lee Jackson, heard a gunshot come from the direction of the store. They testified at trial that appellant returned to the truck and said, "let's go." Linda Sue Lee testified at trial that appellant told her he robbed the 7-Eleven and shot a man who grabbed for his gun.

The next night, September 19, 1980, John Mallard, appellant, was arrested while attempting to steal a pair of sunglasses from another 7-Eleven store on East Lancaster in Fort Worth. Mallard had a pistol in the back waist band of his trousers, but a pat down search at the time he was arrested failed to reveal it to police officers. The gun was later found on September 25, 1980, between the right side passenger seat and the door of the police vehicle used to transport appellant to jail on the night he was arrested. This gun was later identified by Linda Sue Lee as "looking like" the same gun appellant used in the hold-up and murder at the Pennsylvania Avenue 7-Eleven store.

While John Elvin Mallard was still in jail on the charge of stealing the sunglasses from the East Lancaster 7-Eleven, an informant told police that Mallard was the one who held up the 7-Eleven on Pennsylvania Avenue on September 18, 1980 and killed Gary Wilson. Mallard was thereafter indicted for the murder of Gary Wilson.

On October 1, 1981, the district attorney's office received an unsolicited letter from Mallard, who was then in the Tarrant County jail awaiting trial, in which he admitted the shooting of Gary Wilson and described

how he had hidden the murder weapon in the police car on the night he was arrested.

In his first two grounds of error appellant takes the position that the trial court was in error in refusing to compel the State to reveal the identity of the informant and the identity of the informant's source, the person or persons who gave the information concerning John Mallard to the informant. The evidence revealed that the Southland Corporation, the owner and operator of the 7-Eleven stores, had paid the informant $25,000 for the information which led to the arrest and conviction of appellant.

While appellant does insist that he was entitled to the name of the informant, he seems to place more emphasis and argument on his position that he was entitled to the source of the information given the informant. In the case of *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the Supreme Court held that where an informant, a government undercover man, was the only other participant in the transportation of illegal drugs besides the accused, the refusal of the government to disclose the identity of the informant was prejudicial error. The holding was based on fairness, the court saying that the informant's testimony might have disclosed an entrapment, might have thrown doubt upon petitioner's identity or on the identity of the package (of drugs) delivered, or might have testified to petitioner's possible lack of knowledge of the contents of the package that he "transported." The informant in *Roviaro* was a participant in the crime and the court held that his testimony could have been helpful to the accused.

The court in *Roviaro,* however, also said that no fixed rule with respect to disclosure is justifiable. It was said: "The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, *taking into consideration the crime charged,* *the possible defenses, the possible significance of the informer's testimony, and other relevant factors."* (Emphasis added).

The Texas courts have followed *Roviaro,* and have held that unless the informant is shown to have participated in the offense, or to have been present at the time of the offense, or otherwise is shown to have been a material witness to the transaction, or is to be a material witness as to whether the defendant knowingly committed the act charged, the identity of the informant need not be disclosed. *Rodriguez v. State,* 614 S.W.2d 448 (Tex.Cr.App.1981); *Etchieson v. State,* 574 S.W.2d 753 (Tex.Cr.App.1978); *Laque v. State,* 627 S.W.2d 781 (Tex.App.— San Antonio 1982, pet. ref'd).

In the case at bar, the testimony on a bill of exceptions of the detective who took the information from the informant revealed that the informant was not a participant in the crime, was not present at the time, was not a material witness, and in fact, did not even know John Elvin Mallard. We find no difficulty in holding that under these facts, since the disclosure of the informant could not possibly have aided appellant in any way, and since he had no first-hand knowledge of the crime involved, that the refusal by the trial court to disclose his or her identity was proper.

Neither the *Roviaro* case, *supra,* nor any of the others cited herein, went beyond the question of disclosure of the informant, and dealt with the disclosure or nondisclosure of the informant's source of information. Neither the appellant nor the State has cited such a case and we have found none on this precise issue. It seems that if the "source" were required to be revealed in this case, such revelation or disclosure might well reveal the identity of the informant, and thus the accused would be permitted to do indirectly what the law would not permit him to do directly.

Moreover, the record in this case shows that the "source" of the information was on the list of the State's witnesses given to appellant. From the evidence it seems apparent that of those on the list, and who testified for the State, that only three peo-

ple, Earl Choate, Jr., the employee who was present at the crime scene, Linda Sue Lee and Edward Lee Jackson, who drove appellant to the 7-Eleven store on Pennsylvania Avenue, could possibly have been the source. All three of these witnesses were produced by the State, and although appellant had full opportunity to cross-examine each of them, he failed to determine from any of them whether or not they had discussed the case with any possible informant. Earl Choate, Jr., did testify, on examination by appellant's counsel on a bill of exceptions that he knew nothing about the reward of $25,000, that he had not discussed it with anyone, including officials of Southland Corporation, and that he had no expectation of receiving any such reward. He further testified that he had been told by the district attorney's office that the reward had been paid to the informant.

Appellant has completely failed to show any harm done him by the refusal of the court to compel the disclosure of the informant or his source. His only defense was that he did not commit the crime, and yet three witnesses, including his own two companions of that evening, put him at the scene of the crime. One of these witnesses, Earl Choate, Jr., saw him in the store and heard the gunshot which killed Gary Wilson. Moreover, appellant admitted the killing in his letter in October of 1981, written to the district attorney's office, and admitted in evidence.

Accordingly, applying the test of *Roviaro, supra,* and taking into consideration the crime charged, the defense raised by appellant, and the possible significance of the source's testimony, we hold that under the facts reflected in this record, appellant was not entitled to disclosure of either the informant or the informant's "source." In a case where the informant is not to be disclosed, to require the disclosure of the informant's source would destroy the protection offered by the law to the informant, and would greatly discourage the revelation of information by all citizens relating to the commission of crimes.

Appellant's first two grounds of error are overruled.

Appellant's third ground of error says that his right to a speedy trial under the Sixth and Fourteenth Amendments to the United States Constitution, the Texas Constitution and the Speedy Trial Act was violated.

Appellant was arrested on September 19, 1980, the indictment returned on November 4, 1980, and on December 3, 1980, the State announced ready for trial. The State also, on many other occasions when the case was set, announced ready for trial. On December 11, 1980, appellant and his counsel filed an application for continuance and a *Waiver of Speedy Trial.* (Emphasis ours).

An announcement that the State is ready within 120 days of commencement of a criminal action is a prima facie showing of compliance under Tex.Code Crim. Proc.Ann. art. 32A.02 (Vernon 1966); *Fraire v. State,* 588 S.W.2d 789 (Tex.Cr. App.1979). Hence, in this case, the State made a prima facie showing of compliance with art. 32A.02. The showing of prima facie compliance may be rebutted by the accused by evidence, from any source, that demonstrates that the State in fact was not ready for trial. It may consist of a demonstration that the State did not have a key witness or piece of evidence available by the last applicable time limit. *Barfield v. State,* 586 S.W.2d 538 (Tex.Cr.App.1979).

Here, appellant attempted to rebut the State's announcement of ready by showing that the State did not have expert analysis of appellant's letter of confession written to the district attorney's office and had not located the minister to whom the deceased Gary Wilson was talking on the phone when police arrived at the murder scene. The prosecutor testified that he could try the case without a handwriting expert because the State had a lay witness who could, and in fact did, testify that the letter was in appellant's handwriting. As to the minister, the evidence shows that he was not a key witness because the only thing he could testify to was that the deceased told him he had been shot but didn't

know why. The State, at the time it announced ready, could have gone to trial without the minister.

Accordingly, we hold that appellant did not successfully rebut the State's announcement that it was ready and there was no error in the refusal of the trial court to dismiss the indictment.

■ Finally, regardless of the State's position as to readiness for trial, appellant and his counsel on December 11, 1980, when this case was set for trial, filed an Application for Continuance and a *Waiver of Speedy Trial.* (Emphasis ours). There is no claim that the waiver was invalid for any reason, or that appellant was incompetent or under any sort of duress at the time the waiver of speedy trial right was signed. A defendant's rights under art. 32A.02, may be affirmatively and intentionally waived. *Ramirez v. State,* 590 S.W.2d 509 (Tex.Cr. App.1979); *Calais v. State,* 624 S.W.2d 811 (Tex.App.—Houston [14th Dist.] 1981, no pet.). By express written waiver, appellant intentionally relinquished the right he now claims.

■ Additionally, we find under the evidence in this case, there is no showing whatever that there was any violation of his right to a speedy trial under either the United States or Texas Constitution. The period of time between commencement of the action and trial was long, almost two years, but the State announced ready for trial at all appropriate times, and there is no showing in the record that the delay was caused by any but necessary and unavoidable reasons.

Appellant's third ground of error is overruled.

■ In appellant's fourth ground of error he contends that there was error in the trial court's permitting the State to use crucial evidence obtained after their announcement of ready in violation of the Due Process Clause of the Fourteenth Amendment and Tex.Code Crim.Proc.Ann. art. 38.23 (Vernon 1979). Appellant cites no authority for his position, and we hold, in view of his waiver of the right to a speedy trial, and his failure

to rebut the State's prima facie showing of readiness, that this contention is totally without merit. Accordingly, the fourth ground of error is overruled.

Grounds of error numbers five and six complain of the admission by the trial court of the letter voluntarily written by appellant from his jail cell to the district attorney's office, in which he admitted the robbery and murder of Gary Wilson, as well as the hiding of the murder weapon in the police car on the night he was arrested. In this connection, appellant says his rights against self-incrimination and assistance of counsel were violated. This letter, admitting in considerable detail the robbery and the murder, was written by appellant from his jail cell a little over a year after he was first incarcerated. He had been warned of his constitutional rights on several occasions, including when he was arrested and when he was put in a lineup. He had appointed counsel at the time he wrote the letter. The record shows that no prosecutor or law enforcement officer had contacted appellant or attempted to interview him since September 25, 1980; the letter was received by the district attorney's office on October 1, 1981.

■ Appellant filed a motion to suppress introduction of this letter and the trial court held a *Jackson v. Denno* type hearing, at the conclusion of which the court filed findings of fact and ruled that the written statement admitting the offense of murder was entirely voluntary, that there was no incompetency of appellant shown, and that the statement was admissible.

We have examined this record carefully and hold that the findings of the trial court are well supported by the evidence and that the court's conclusions are a proper application of law to the findings. Since they are, we may not overturn the decision to admit appellant's statement into evidence.

■ We also hold that at the time he wrote the letter, appellant was not under custodial interrogation, that no one suggested that he write such a letter, nor coerced him into doing so. He also, at that

time, had two court appointed attorneys, who represented him very well at trial, who were available if he had asked for them. Statements which are made by a defendant to authorities, which are voluntary and not a product of interrogation and not made in response to inquiries by officers, are admissible at trial. *Curtis v. State,* 640 S.W.2d 615 (Tex.Cr.App.1982); *Ellerbee v. State,* 631 S.W.2d 480 (Tex.Cr.App.1981); *Sanchez v. State,* 589 S.W.2d 422 (Tex.Cr.App.1979).

Appellant's fifth and sixth grounds of error are overruled.

In his seventh ground of error appellant complains of the refusal of the trial court to charge the jury on the voluntariness of his letter written to the district attorney admitting the crime. The trial court's charge, as a matter of fact and of record, did contain a proper charge to the jury on the question of voluntariness. It instructed the jury that if they had any reasonable doubt in their minds that the letter was not voluntarily written that they were to totally disregard it and not consider it as evidence.

The seventh ground of error is overruled.

Appellant next contends in ground of error number eight that the murder weapon, found in the police car on September 24, 1980, some five days after the robbery and murder, was improperly admitted into evidence in violation of his constitutional rights and in violation of Tex.Code Crim. Proc.Ann. art. 38.23 (Vernon 1979). His contention is that there was no predicate laid to connect this gun with appellant and with the offense of September 18, 1980. We disagree with this contention.

In the letter written to the district attorney, appellant clearly and precisely described how he hid the .22 caliber revolver he had on him when he was arrested on September 19, 1980. The gun was found by police under the right front passenger seat, on September 24, 1980, exactly where appellant said he had put it. This in itself was sufficient evidence to admit the weapon. *See Marini v. State,* 593 S.W.2d 709, 714 (Tex.Cr.App.1980).

Even if appellant's written statement had been insufficient to positively identify the weapon as the one used in the commission of the offense, the testimony of Linda Sue Lee, appellant's girlfriend, was sufficient to support the admission of the weapon into evidence. She testified that although she could not swear positively that that was the gun appellant carried in his pants on September 18, 1980, when the robbery and murder were committed, it looked very much like the gun he carried that night, and that he always carried the gun in the back of his pants. The lack of positive identification of a weapon or instrumentality used during the commission of an offense affects only its weight and not its admissibility. *Simmons v. State,* 622 S.W.2d 111, 113 (Tex.Cr.App.1981).

Ground of error number eight is overruled.

Grounds of error numbers nine, ten, eleven and twelve contend that appellant's right to counsel, due process and other constitutional rights, under the Sixth and Fourteenth Amendments, and Tex. Const. art. I, sec. 19, were violated by the pretrial identification (lineup) procedure which tainted the in-court identification of appellant. In ground of error thirteen he says that the trial court erred by refusing to charge the jury on the "lawfulness" of the pretrial and in-court identifications. The record reflects that Choate, the 7-Eleven employee who was present in the store when the offense occurred, was unable to identify appellant in a photographic display on September 23, 1980. On the following day, however, Choate did identify appellant in a physical lineup consisting of five black men all of whom were approximately the same height and weight and were dressed substantially the same. Appellant complains primarily of the fact that of the five men in the lineup, he was the only one whose picture had appeared in the photographic display shown to Choate the preceding day and he was the only one with no obvious facial hair. He says these facts, plus the fact that the lineup was conducted at a time when appellant's counsel was not

present so taints Choate's in-court identification of appellant as the offender as to render the in-court identification inadmissible. We do not agree.

■ Choate identified appellant in the lineup on September 24, 1980, the day *before* he was formally charged with the offense for which he was tried and while appellant was in custody on an unrelated offense, a robbery charge. Because he had not yet been formally charged with the murder at the time of the identification procedure complained of, appellant's right to counsel on the murder charge had not yet matured and there was no violation of his Sixth Amendment right to counsel in the conduct of the lineup. *Turner v. State,* 614 S.W.2d 144 (Tex.Cr.App.1981).

■ Appellant next asserts that the physical lineup in which Choate identified appellant was impermissibly suggestive and therefore tainted Choate's in-court identification of appellant. In evaluating an identification procedure, the test is whether under the totality of the circumstances, the identification procedure was so unnecessarily suggestive and conducive to misidentification that it amounted to a denial of due process. *See Garza v. State,* 633 S.W.2d 508 (Tex.Cr.App.1982). As previously stated, the record shows that all five participants in the lineup complained of were black, were of approximately the same height and weight, and were dressed substantially the same. Appellant, however, was the only lineup participant who had appeared in the photographic display on the preceding day and was the only one of the five with no obvious facial hair.

■ Applying the test enunciated in the *Garza* case, *supra,* we hold that, *under the totality of the circumstances,* the physical lineup in the case at bar was not so unnecessarily suggestive and conducive to misidentification as to amount to a denial of due process. (Emphasis ours). Choate testified that the store was well lit on the night of the offense and that he got two good looks at appellant's face that night. He specifically stated that the photographic

display did not help him to pick out appellant in the physical lineup the following day. This testimony effectively negatives appellant's contention that Choate's prior viewing of appellant's photograph conduced to a misidentification of appellant in the lineup. As to the complaint that appellant was the only lineup participant with no obvious facial hair, we hold that this did not render the lineup impermissibly suggestive in light of the substantial similarity of the lineup participants in other respects. While it might be a better practice to use in a lineup persons whose every feature matches, neither due process of law nor common sense requires such a procedure. *Turner v. State,* 600 S.W.2d 927 (Tex.Cr. App.1980).

■ Having held that the pretrial lineup identification procedure was not impermissibly suggestive, the in-court identification of appellant by Choate was in no way tainted. Even if the pretrial identification *had* been impermissibly suggestive, a witness' in-court identification which is independent of any improper pretrial identification procedures is admissible. *Turner, supra; Garza, supra; Thompson v. State,* 480 S.W.2d 624 (Tex.Cr.App.1972). The testimony of Choate regarding his observation of appellant on the night of the offense sufficiently establishes that the in-court identification of appellant was independent of any pretrial identification.

■ As to appellant's contention in ground of error number thirteen that the trial court should have charged the jury on the legality and sufficiency of the identification procedures, we hold that the evidence in this record, did not raise this issue and that there was no need to charge the jury on this issue. There was actually no evidence that either of the pretrial identification procedures affected in any way or tainted the positive in-court identification of appellant by the witness Choate. The jury heard all the evidence on the pretrial and in-court identification and it was able, without instruction, to determine if the in-court identification by Choate was correct.

See *Johnigan v. State*, 628 S.W.2d 852 (Tex. App.—Fort Worth 1982, pet. ref'd).

Grounds of error nine through thirteen are overruled.

The fourteenth ground of error relates to the failure of the trial court to grant a new trial based on jury misconduct. At a hearing on the motion for new trial, appellant introduced one juror, Mrs. Gaskill, who testified that mention was made of the parole laws and that "several" jurors changed their minds on punishment after the parole laws were mentioned. The State introduced only an affidavit signed by the foreman of the jury. A review of the testimony at the hearing on the motion for new trial reflects that the mention of the parole law was made early in the jury deliberations and that that conversation was immediately rejected and squelched by other members of the jury, and was not thereafter mentioned.

Appellant relies on *Munroe v. State*, 637 S.W.2d 475 (Tex.Cr.App.1982) to support his contention that the mere mentioning of the parole laws, if it results in increased punishment, is sufficient grounds for new trial based on jury misconduct. However, we have a far different situation in this case. Here, only one juror testified, and there was no testimony, as there was in *Munroe*, that the mention of parole laws played an important part in *any* juror's punishment decision. Instead, the testimony shows that the parole laws were mentioned once and then "immediately ... squelched."

Juror Gaskill was not able to recall whether the jurors had already taken a vote on the number of years of confinement prior to the mention of the parole laws. There was no clear testimony that any particular juror voted for an increase in time of incarceration because of the mention of parole laws. Instead, it appears from the record of the hearing, that the jurors were concerned with the amount of time necessary for appellant's rehabilitation and made the decision to vote for a longer period of time in order to provide for same.

■ Although discussion of the parole law by the jury is always misconduct, that misconduct does not always constitute the denial of a fair and impartial trial. It is that standard which determines whether a defendant must be granted a new trial. *Munroe, supra*, at 477.

■ In the instant case, the trial court heard the testimony regarding jury misconduct and overruled the motion for new trial, impliedly finding that the misconduct was not such as to have denied appellant a fair and impartial trial. The record supports this finding and therefore there is no basis for this court to disturb the ruling of the trial court.

Appellant's fourteenth ground of error is overruled.

In his fifteenth and last ground of error, appellant asserts error on the part of the trial court in its failure to grant a new trial based on "newly discovered evidence" with respect to the names of the informant and the informant's source. At the hearing on the motion for new trial held on July 23, 1982, approximately one month after the case had been tried, appellant's attorneys attempted to testify that on June 23, 1982, while the jury was deliberating, they received a telephone call from someone who identified himself only as "Wendell," who purported to have information concerning the informant in this case.

■ The trial court rejected this offer of testimony on the ground that it was hearsay and denied the motion for new trial on this basis. We think the court was correct in his ruling that this proffered testimony was hearsay. We also hold that this proffered evidence did not meet the test for newly discovered evidence, that it in fact was not newly discovered evidence, and that there was no showing of due diligence on the part of appellant and his attorneys. *Hines v. State*, 495 S.W.2d 252 (Tex.Cr.App. 1973); *Powell v. State*, 502 S.W.2d 705 (Tex.Cr.App.1973); *Wrenn v. State*, 478 S.W.2d 98 (Tex.Cr.App.1972).

Additionally, we have already held, in our discussion of grounds of error one and two, that under the facts in this case, appellant

was not entitled to disclosure of the identity of either the informant or his source. The refusal of this hearsay evidence on the identity of the informant or his source did not constitute error.

The fifteenth ground of error is overruled.

The judgment is affirmed.