**Hermengildo LOMAS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 1222–84.**

Court of Criminal Appeals of Texas, En Banc.

Jan. 22, 1986.

John H. Hagler, Dallas, for appellant.

Henry Wade, Dist. Atty. and Jeffrey B. Keck, Michael O'Connor and Bob Phillips, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

Appellant was convicted by a jury of the offense of aggravated rape. The jury assessed punishment at confinement for life in the Texas Department of Corrections. The Dallas Court of Appeals, in an unpublished opinion, affirmed the conviction. *Lomas v. State*, No. 05–83–00576–CR (Tex. App.—Dallas, delivered Oct. 26, 1984). We granted review to determine whether the State, during final argument on punishment, erroneously invited the jury to sentence appellant for a collateral offense. We will reverse.

Appellant was indicted for the sole offense of aggravated rape, alleged to have been committed on or about August 1, 1982. During the trial, the complainant, appellant's eleven year old stepdaughter, testified that she ran away from home on December 1, 1982, because appellant beat her and tied her hands and feet, making her kneel on broken pecan shells on the bathroom floor.[1] Complainant then testified that, in August of 1982, the date of the instant offense, she had been forced to engage in oral sodomy and sexual intercourse with appellant. Complainant also testified that, on that same occasion, appellant forced her brother to undress and placed him on top of complainant. Finally, complainant testified that she had been forced to engage in sexual intercourse with appellant on prior occasions.

After the jury found appellant guilty of aggravated rape, the State offered no further admissible evidence during the punishment stage of the trial. Appellant testified as to his eligibility for probation.

The State then argued in its opening statement, inter alia, that appellant should be sentenced to life imprisonment because

---

**1.** The testimony concerning the December 1st incident apparently was offered to explain how complainant came into contact with law enforcement officials, leading to appellant's arrest for aggravated rape. Appellant did not object to this testimony at trial nor argue on appeal that this testimony was inadmissible. No ground of review concerning the admissibility of this testimony is before this Court; therefore, we express no opinion as to its admissibility. We limit our discussion of this testimony in this opinion to the effect it had on the jury, which came as a result of improper final argument by the State.

of the nature of the case and its life-long effect on the victims: the complainant and her brother. Appellant's counsel responded in his argument, inter alia, that the circumstances of the case warranted probation because appellant was emotionally ill and not "the mean, ornery person that you normally see [going to prison]."

In response to the characterization of appellant as emotionally ill but not mean, the State advanced the following argument in its concluding statement:

"What you are going to end up doing is determining how many years this man should go down to the Texas Department of Corrections. You know, the Legislature has set up a range of punishment from five years to ninety-nine years or life. I submit to you the facts of this offense just zoom toward the heavy end of the scale. I would like for you, if you could for a moment, to realize that the things you heard about didn't happen in a sterile, well-lit courtroom like this. They happened in an apartment, and the living hell this man put those children in. I would like for you to consider how many years you would give some man that would have the nerve and whatever it would take for somebody to have sexual intercourse with their own daughter that is eleven years old. How many years would you start off with for somebody that did that? What else do you know about the man? How many more years would you tack on when he has committed oral sodomy on the girl, when he has taken an extension cord and turned her back into something like—"

After an objection to misstatement of evidence was overruled, the State continued:

"How many more years would you tack on to somebody that would just—just think of the kind of man you are dealing with. Mr. Halsey [defense counsel] said this isn't a mean man. What kind of adjectives would you use when you look at the man in trying to describe what kind of person he is other than 'mean' and 'vicious' and 'unremorseful'? *How*

*many more years would you tack on to somebody that would take pecan shell[s] and put them on the floor and hogtie his daughter by the hands and feet and make her kneel on the broken shells? How many more years would you add on for that ?* [2]

"[DEFENSE COUNSEL]: Judge, I will object. That is an offense for which he is not charged.

"THE COURT: Overruled."

The State concluded final argument by asking the jury to begin their deliberations at fifty years confinement in the Texas Department of Corrections. The State encouraged the jury to "go higher than that based upon the evidence you have...."

Appellant argues that the emphasized portion of the State's argument invited the jury to punish appellant for the collateral offense of tying up the complainant and forcing her to kneel on broken pecan shells. The Dallas Court of Appeals, citing *Klueppel v. State*, 505 S.W.2d 572, 574 (Tex.Cr. App.1974), rejected appellant's argument and held that the State's argument properly assessed the facts and circumstances surrounding the offense charged in an effort to secure a severe sentence.

■■■ A defendant's trial must focus upon the accusation made by the State in its pleadings. *Klueppel*, supra [citing *Albrecht v. State*, 486 S.W.2d 97 (Tex.Cr.App. 1972) ]. Therefore, a defendant "should not be assessed punishment for collateral crimes or for being a criminal generally, but is entitled to be punished upon the accusations in the indictment for which he has been found guilty." Id., at 574. However, under the doctrine of "res gestae," the State is entitled to elicit testimony on the facts and circumstances surrounding the commission of the charged offense. *Klueppel*, supra [citing *Dunlap v. State*, 462 S.W.2d 591 (Tex.Cr.App.1971) ]; *Albrecht*, supra at 97. See also *Maynard v. State*, 685 S.W.2d 60 (Tex.Cr.App.1985); *Maddox v. State*, 682 S.W.2d 563 (Tex.Cr. App.1985). In conjunction, the State may

---

2. All emphasis is supplied by the author of this opinion unless otherwise indicated.

then ask the jury to consider how these facts and circumstances serve as aggravating or mitigating factors in determining the severity of the punishment to be assessed for the offense charged. *Klueppel,* supra. But the State must avoid presenting an argument that encourages the jury to include in their verdict additional punishment for a collateral crime or for a defendant being a criminal generally. *Klueppel,* supra.

These competing statements of law create a delicate balance between a defendant's right to a sentence aimed at only punishing him for a charged offense and society's interest in punishment that is based upon a complete understanding of a defendant's mens rea regarding that charged offense. Accordingly, this Court has repeatedly emphasized the importance of avoiding a final argument that encourages the jury to try, convict or punish a defendant additionally for collateral crimes that have become apparent through introduction of the facts and circumstances immediately surrounding the offense charged. *Kleuppel,* supra; *Brown v. State,* 530 S.W.2d 118 (Tex.Cr.App.1975). See also *Walls v. State,* 548 S.W.2d 38 (Tex.Cr.App.1977).

In *Klueppel,* supra, a defendant was tried for possession of marihuana. The facts surrounding the offense indicated that several types of drugs were seized from the defendant along with marihuana. During argument at the punishment stage of the trial, the State asked the jury to punish the defendant for possession of marihuana and the other drugs "and all these other things that he has done." Id., at 573. Defendant's objection was overruled. We unanimously reversed the conviction, holding that the State's argument went "beyond the bound of asking the jury to consider the circumstances surrounding the offense in fixing the punishment." Id., at 574.

In *Brown,* supra, a defendant was prosecuted for aggravated robbery. The facts surrounding the offense showed that the defendant entered a convenience store and robbed the complainant along with two other persons. During argument at the punishment stage of the trial, the State asked the jury to give the defendant thirty years because "you've got three people that were robbed. ... Now that would be ten years each robbery." (emphasis removed) Id., at 119. Defendant's objection was overruled. We unanimously held:

> "The prosecutor here went 'beyond the bounds of asking the jury to consider the circumstances surrounding the offense in fixing punishment.' *Klueppel v. State,* supra, at 574. Instead, he specifically asked the jury to punish the appellant for two additional crimes not then being tried. This was serious and prejudicial error requiring reversal." *Brown,* supra at 120.

■ Therefore, if the surrounding facts and circumstances of a charged offense include a collateral offense, the State may not simply point out the existence of a collateral offense and thereby request *additional* punishment for that *collateral* offense. Such an argument seeks to punish a defendant for an act for which he is not on trial. The State must more narrowly show that the collateral offense in some way further enhances the gravity of the charged offense and, in fact, is inexorably connected with the charged offense.

■ In the instant case, appellant's counsel argued that the facts of the aggravated rape indicated that appellant was possibly only ill and not mean and asked the jury to consider probation. The State, in responding to this argument, initially argued in general terms that the facts and circumstances surrounding the charged offense created the inference that appellant was a "mean" person and, therefore, should be sent to prison rather than be given probation. However, the State continued by specifically asking the jury how much additional punishment for the particular collateral crime of tying up the complainant and making her kneel on pecan shells it would "tack

on" or "add on" to whatever punishment was proper for the aggravated rape.[3]

The State's argument did not simply suggest that the collateral crime in some way clarified appellant's "mean" intentions regarding the aggravated rape. It invited the jury to make a separate determination of punishment for a collateral crime that occurred three to four months *after* the aggravated rape. Therefore, we find that the State, by inviting the jury to punish appellant for a remote collateral crime, went beyond the bounds of merely asking the jury, in assessing punishment, to consider the facts and circumstances immediately surrounding the charged offense.[4]

■ We are unable to find the State's improper argument harmless because appellant was assessed the maximum term of years available for the offense of aggravated rape.

We reverse the judgments of the court of appeals and the trial court. This cause is remanded to the trial court.

WHITE, J., dissents.

---

**3.** The State, in its Brief in Opposition to Appellant's Petition for Discretionary Review, takes the position, as did the court below, that the collateral offense at issue in the instant case was introduced into evidence without objection and, therefore, coupled with the invited argument by appellant, was fair game for the State to fully develop in final argument. We find this contention to be untenable because "the State is not entitled to ask the jury to assess punishment for the collateral crimes *which may have been ad-* *mitted in evidence* [over or without objection] and add such punishment to the penalty assessed for the offense alleged in the indictment." *Klueppel,* supra at 574.

**4.** This argument is not to be confused with asking the jury to consider a defendant's criminal "record." See *Klueppel,* supra at 574; art. 37.07(a), V.A.C.C.P.