John B. Holmes, Jr., Harris Co. Dist. Atty., Timothy G. Taft, Casey O'Brien, Harris County Asst. Dist. Attys., Houston, for appellee.

Before DUGGAN, LEVY and HOYT, JJ.

**Craig Rubien DAVIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01-85-0808-CR.**

Court of Appeals of Texas, Houston (1st Dist.).

June 12, 1986.

OPINION

HOYT, Justice.

Appellant pled guilty, before a jury, to the offense of aggravated sexual assault. The jury assessed punishment at 60 years confinement. We affirm.

The record reveals that on December 18, 1984, appellant entered the home of the complainant, sexually assaulted her, and stabbed her with a knife in the neck. Before leaving the complainant's home, the appellant also took some of the complainant's money. Although the indictment initially alleged that appellant committed the offenses of aggravated sexual assault and attempted capital murder, the State later abandoned the attempted capital murder paragraph.

▊ In his first ground of error, the appellant contends that the trial court erred in overruling the objections made to the prosecutor's argument regarding punishment.

In accordance with Tex.R.Crim.P.Ann. art. 37.07, sec. 4(a) (Vernon Supp.1986), the charge to the jury included the following instructions:

It is also possible that the length of time for which the defendant will be impris-

oned might be reduced by the award of parole.

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-third of the sentence imposed or twenty years, whichever is less, without consideration of any good conduct time he may earn. If the defendant is sentenced to a term of less than six years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. *You are not to consider the manner in which the parole law may be applied to this particular defendant.* (Emphasis added.)

After the charge was read to the jury, the appellant urged the jury to assess a probated sentence or, in the alternative, to assess only the actual time that they wanted the appellant to serve. The appellant also asked the jury not to consider the appellant's potential eligibility for parole.

In response, the State argued as follows:

Mr. O'Brien: Let me talk to you a little bit about that parole law. I told you on voir dire I liked it. At least to the extent that it for the first time in the jurisprudence [sic] this state gives the jury some right to know what they are doing when they go back there, some right to know what is going to happen to the Defendant once they assess a sentence, some right not to look in the paper and see he is out already.

Mr. Guerrero: Objection, Your Honor. That's a misstatement of the law.

The Court: What?

Mr. Guerrero: The parole law says they are not to clearly said [sic] that.

Mr. Guerrero: Your Honor, I believe that Your Honor charged that they are not to consider the extent of time to which a person may be pardoned or paroled in during their deliberation. They are clearly arguing contra. I would object to that.

The Court: If you are arguing contrary to what the charge says, I sustain the objection.

Mr. O'Brien: Let me tell you what that law says. It says if you find somebody is guilty of the offense of aggravated sexual assault and they used or exhibited a deadly weapon in the commission thereof and you sentence him to six years in the penitentiary, he is guaranteed to serve two. That's what it says. Multiply about ten, what does it mean? You assess a 60 year sentence.

Mr. Guerrero: Same objection, Your Honor.

The Court: Overrule the objection.

Mr. Guerrero: Ask that the jury be instructed not to consider that, Your Honor.

The Court: Overruled.

Mr. Guerrero: Please note our exception, Your Honor.

Mr. O'Brien: Assess a 60 year sentence and it guarantees 20. You are not to consider how much after 20 he serves, if he does. That's what it says.

Mr. Guerrero: Same objection, Your Honor.

The Court: Overruled.

Mr. Guerrero: Please note our exception.

Mr. O'Brien: And that's exactly what I am going to ask you to do: To assess a sentence, a sentence, not the punishment, but a sentence of not less than 60 years in the penitentiary, not one day less and maybe he will get that help there that Mr. Guerrero said was guaranteed him. . . .

The issue on appeal is whether the State's argument improperly urged the jury to consider the manner in which the parole law might be applied to the appellant. Because this issue is seemingly one of first impression, we must turn to the wording of the statute for guidance.

Article 37.07, sec. 4(a)[1] provides in part, as follows:

Sec. 4(a) In the penalty phase of the trial of a felony case in which the punishment is to be assessed by the jury rather than the court, if the offense of which the jury has found the defendant guilty is listed in Section 3f(a)(1), Article 42.12, of this code or if the judgment contains an affirmative finding under Section 3f(a)(2), Article 42.12, of this code, unless the defendant has been convicted of a capital felony the court shall charge the jury in writing as follows:

\* \* \* \* \* \*

'It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-third of the sentence imposed or 20 years, whichever is less, without consideration of any good conduct time he may earn. If the defendant is sentenced to a term of less than six years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. *You are not to consider the manner in which the parole law may be applied to this particular defendant.'* (Emphasis added.)

Article 37.07, sec. 4(a) expressly forbids consideration by the jury of the manner in which the parole law may be applied to a particular defendant. Therefore, if the State had expressly argued that the jury should assess this appellant 60 years in order to guarantee that he serve 20 years, the State would have clearly crossed the line of permissible argument drawn by the statute.

However, here the State merely discussed the rule set out in the charge and in art. 37.07, and then enlarged upon this rule by arguing that a defendant convicted of aggravated sexual assault, and who used or exhibited a deadly weapon, is guaranteed to serve two years if assessed six years, and 20 years if assessed 60 years.

We find that this argument comes dangerously close to crossing the statutory line of permissible argument; however it falls short of urging the jury to consider how the parole law will actually be applied to the appellant.

Accordingly, we hold that the trial court did not err in overruling appellant's objection.

This ground of error is overruled.

██ In his second ground of error, the appellant contends that the prosecutor im-

---

1. Although the issue was not raised by the appellant, we note that art. 37.07, sec. 4 contains ambiguities.

During the 69th Legislative Session, articles 37.07 and 42.12 were amended by adding sec. 4 to art. 37.07 and by recodifying the offenses listed in art. 42.12, secs. 3f(a)(1) and (2) under 3g(a)(1) and (2). *See* 69th Leg.Sess. pp. 2903–2904, 4446, chs. 427, 576. In doing so, the legislature apparently neglected to change the cross-reference in art. 37.07, sec. 4(a) to reflect the recodification of art. 42.12. The resulting ambiguity from reading both statutes together is that there is no list of offenses in the current 3f(a) from which the court may determine when the instruction on parole is to be given.

properly referred to other offenses during closing argument.

At trial, the State made the following argument describing the appellant's actions after he sexually assaulted the complainant:

Let's think about what this boy did if we could characterize him as a boy. Think about whether five or ten years probation is an appropriate sentence and I want you to think about the senario [sic] I provided you with on voir dire about the possibly of a case where you might want to consider probation and I'll ask you right now is that it?

\* \* \* \* \* \*

... He has had what he wants. He wants more. He wants the contents of her purse. He wants her Christmas money and he dumps it all out, all over the bed, gets what he wants and obviously gets it to his pocket because we got it from his pocket—the blood money. And the one thing that I will never, never, never forgive and I don't see how anyone can is he tried to end her life. Why? Think about the only reason why. Where is the reason? What is the reason? The towel slipped off. The towel slipped off. She knows exactly who he is: That's why. She didn't make him come back over there and stab her in the chest puncturing her lung.

\* \* \* \* \* \*

And he didn't stop there with that other stab wound. She bumped into the knife. You heard the doctor say two and a half inches into the throat or was it three and a half? I can't remember. You feel that muscle right there it went in to. Feel it in your own neck. That's not an accident. And that didn't happen during the robbery and the rape. That happened afterwards. When she wanted him to leave, that's all: she wanted was him to leave. So we don't have a simple aggravated assault, aggravated sexual assault; we have a burglary; we have a rape; we have a robbery; we have an attempted murder.

Mr. Guerrero: Objection. He is arguing outside the record, Your Honor.

The Court: I'll overrule the objection.

The appellant argues that the State's reference to a burglary, robbery, and attempted murder was improper because it was outside the record.

The State contends that the appellant waived any error by not objecting when the argument was previously made. The State further argues that even if the objection had been timely, the argument was not improper, but was merely a summation of the several offenses that were part of the res gestae of the charged offense. We agree.

In *Lomas v. State*, 707 S.W.2d 566 (Tex. Crim.App.1986), the court set out the boundaries of proper argument during the punishment phase, when there is evidence that the accused committed a collateral offense which is res gestae of the charged offense:

[I]f the surrounding facts and circumstances of a charged offense include a collateral offense, the State may not simply point out the existence of a collateral offense and thereby request *additional* punishment for that *collateral* offense. Such an argument seeks to punish a defendant for an act for which he is not on trial. The State must more narrowly show that the collateral offense in some way further enhances the gravity of the charged offense and, in fact, is inexorably connected with the charged offense.

*Id.* (emphasis supplied).

In *Lomas*, the defendant was charged with aggravated sexual assault. The State specifically asked the jury to consider how much additional punishment should be "tacked on" for the collateral offense of tying up the complainant and making her kneel on pecan shells. The court found that this argument was improper because it invited the jury to make a separate determination of punishment for a remote collateral crime. *Id.*

In contrast, the State's argument in the present case does not invite the jury to

assess additional punishment for the collateral offenses committed immediately after the charged offense. Instead, the prosecutor asked the jury to consider the entire "scenario" when considering the probation requested by appellant. The prosecutor then summarized the evidence, including the robbery and stabbing of the complainant.

We conclude that the prosecutor did not go beyond the boundaries of proper argument when he discussed the circumstances surrounding the appellant's aggravated rape of the complainant. *Cf. Lomas,* 707 S.W.2d 566; *Klueppel v. State,* 505 S.W.2d 572 (Tex.Crim.App.1974).

This ground of error is overruled.

The judgment is affirmed.