**John Kerry POWERS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. C14–87–111–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 11, 1988.

Robert R. Scott, Katy, for appellant.

John B. Holmes, Jr., Gerald B. Scheve, Houston, for appellee.

Before JUNELL, SEARS and DRAUGHN, JJ.

## OPINION

JUNELL, Justice.

We withdraw our Opinion dated July 14, 1988, and substitute the following opinion.

John Kerry Powers appeals a felony conviction for murder. The jury found appellant guilty of the offense and sentenced him to twenty years imprisonment. We affirm.

On May 12, 1979, the complainant Judith Powers and appellant were married. The couple had two children during their marriage. In late July 1986, complainant told appellant that she wanted a divorce. The couple separated shortly thereafter. During June 1986, complainant met Allen John-

son and started a sexual relationship with him. On the evening of September 2, 1986, the day complainant was killed, she and Mr. Johnson were out together while appellant was watching the children at complainant's house. Complainant returned home at approximately 9:45 p.m. to check on her children. Complainant asked Mr. Johnson to come to her home after she determined that appellant had departed. When Mr. Johnson drove by complainant's house at 10:00 p.m. and found appellant's car still there, he continued driving. Mr. Johnson then called complainant from a nearby phone to determine if it was all right to come over. Complainant assured him everything was fine and Mr. Johnson arrived at approximately 10:30 p.m.

Complainant and Mr. Johnson were watching television in complainant's bedroom when complainant called appellant's mother to determine if appellant was at home. Complainant was told that appellant was not. Complainant returned to her bedroom. Less than five minutes later, complainant quickly left her bedroom and walked towards the front door. Less than fifteen seconds later Mr. Johnson heard three gunshots. Mr. Johnson quickly exited the bedroom through a window.

As Mr. Johnson was approaching the outside front of the house, he heard a fourth shot that was louder than the first three shots. After Mr. Johnson heard the fourth shot, he started to leap over a stucco wall separating the side yard from the front of the house. As he was almost over the wall he heard a man's voice yell, "Where are you, you brave motherfucker?" followed by a fifth gunshot. Mr. Johnson testified that the fifth shot sounded louder. He turned around and returned to the backyard. He then ran through several backyards and knocked on the back door of one house. He told the occupants of that house that complainant had been shot and asked them to call the police. Mr. Johnson quickly departed their residence when he heard another gunshot coming from the street in front of their home. Mr. Johnson continued to run and cross fences until he saw a fire truck, followed by a police car, moving towards complainant's home. Mr. Johnson

ran towards the police car, waving for them to stop. After they stopped, he advised the two police officers that there had been a shooting at complainant's house. One of the officers immediately ran towards the house, while the other officer and Mr. Johnson quickly followed. When Mr. Johnson arrived at complainant's house, the officer had already arrested appellant and taken him into custody.

In the first point of error, appellant asserts that the evidence is insufficient to support a guilty verdict because the evidence failed to negate that the shooting resulted from sudden passion.

■ The standard for judging a sufficiency question is whether, when viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Texas has adopted this standard for both direct and circumstantial evidence cases. *Chambers v. State,* 711 S.W.2d 240, 245 (Tex. Crim.App.1986). If the issue of sudden passion is raised, then the State must disprove beyond a reasonable doubt the existence of sudden passion. *Lawrence v. State,* 700 S.W.2d 208, 210 (Tex.Crim.App. 1985); *Bradley v. State,* 688 S.W.2d 847, 851 (Tex.Crim.App.1985). Sudden passion is generally said to be manifested by "an excited and agitated mind at the time of the killing caused by an act of the deceased." *Hobson v. State,* 644 S.W.2d 473, 478 (Tex.Crim.App.1983). Since we find that there was sufficient evidence to raise the issue of sudden passion, we will address the point of whether the State disproved the existence of sudden passion beyond a reasonable doubt.

■ There was considerable testimony in the record, covering a lengthy time period, that appellant had expressed a desire to kill complainant. On August 18, 1986, two weeks before her death, complainant told her mother that appellant had said that "he was trying to decide whether to throw her out or shoot her." Testimony in the record shows that appellant conversed with a fellow workman in Corpus Christi about his

upcoming divorce and marital problems. Mr. Leslie Miller testified that in August 1986 appellant stated, "he had rather just blow her away, instead of divorcing her." Appellant made these statements four or five times to Mr. Miller. Mr. Miller later helped appellant move some of his belongings out of complainant's house. Mr. Miller also testified that appellant had stated, "I just got a $10,000 insurance check" and that he might as well just try to hire somebody with the money to do the job for him. That way, he would be in Corpus Christi and would not have to worry about it. Appellant was considering hiring a killer to kill complainant. Appellant also stated he was considering hiring a private investigator to follow complainant in order to learn to whom she was talking. After complainant's death, appellant asked Mr. Miller not to divulge to anyone that appellant had told him that he "ought to just kill her."

Not only does the record reflect overwhelming evidence regarding appellant's preconceived intent to kill complainant, but it also reflects that appellant was aware of a case where a grand jury had nobilled a man for killing his wife and her lover. Appellant testified that on the evening of September 2, 1986, he had hoped to catch complainant and her boyfriend by surprise. He admitted that he parked his car around the corner from complainant's house so that his car would not be visible from complainant's door. Appellant testified that he brought the loaded gun from Corpus Christi and hid it in his briefcase until he reached complainant's door. Appellant very quietly unlocked both locks on the front door before he saw complainant. According to appellant's own testimony it appears he was indeed attempting to catch complainant and Mr. Johnson by surprise.

Mr. Johnson testified that he did not hear any sounds after complainant left the bedroom and went towards the front door. In contrast, appellant testified that complainant screamed and struggled with him at the front door. Although Mr. Johnson heard three gunshots, he testified that he heard no words, screams or sounds indicating a struggle prior to the time complainant was shot. After shooting complainant, and failing to locate Mr. Johnson in the house, appellant left the house and shot one of the tires on Mr. Johnson's car so that he could not escape.

Reviewing all of this evidence, we find that there was sufficient evidence to substantiate the State's assertion that complainant was not killed as a result of sudden passion. We find that a jury could have found the absence of sudden passion beyond a reasonable doubt. Point of error one is overruled.

In point of error two, appellant contends the State violated a pretrial agreement relating to the admission of statements made by the defendant. The record before us shows no pretrial agreement between the State and the defense. Furthermore, appellant's pretrial motion did not include the suppression of his statements to Mr. Johnson. Appellant's first contention under point two is overruled.

Appellant also maintains the trial court erred in permitting the prosecutor to elicit statements made by appellant to Mr. Johnson without first holding a voluntariness hearing. Statements made by a defendant which are voluntary and not the result of custodial interrogation by police officers are admissible at trial. *Mallard v. State*, 661 S.W.2d 268, 275–76 (Tex.App.—Fort Worth 1983, no pet.). Moreover, Tex.Code Crim.Proc.Ann. art. 38.22 § 6 (Vernon 1979) allows but does not mandate the trial court to hold a pretrial hearing on the voluntariness of a defendant's statement.

■ Mr. Johnson testified he was leaning against a fence, looking at complainant's body, when appellant bristled up and said "You, you." The evidence before us clearly shows that appellant did not make this statement in response to anything said to him by the police officers or by Mr. Johnson. Since appellant's statement was not in response to custodial interrogation we hold that it was voluntarily made. The trial court committed no error when they admitted the statement. Appellant's second point of error is overruled.

In point of error three, appellant contends the trial court erred in permitting

Officer Miller to testify that appellant responded to an inquiry regarding the number of gunshot wounds that had been inflicted on complainant. While appellant's answer to the inquiry was not elicited at trial, Mr. Johnson testified that he did respond to the inquiry. The record reflects that appellant's attorney failed to make a timely objection to the State's questioning. Since appellant made no objection at trial, he has preserved nothing for review on appeal. *Cisneros v. State,* 692 S.W.2d 78, 82 (Tex.Crim.App.1985). We overrule point of error three.

In point of error four, appellant asserts the trial court erred in admitting statements he made to Officer Miller pertaining to the tightness of his handcuffs. The record shows that appellant's attorney made a general objection which is insufficient to preserve error for appellate review. A general objection that fails to inform the trial court of the basis of the complaint does not preserve error. *Gutierrez v. State,* 628 S.W.2d 57, 62 (Tex.Crim.App. 1980). Point of error four is overruled.

■ In point of error five, appellant contends the trial court erred in permitting the State to elicit from Officer Miller testimony that appellant answered as to the purpose of the box knife he carried. First, the record reveals that Officer J.W. Bressler was examined by the State regarding the box knife and not Officer Miller as appellant suggests. Furthermore, appellant's attorney made a general objection to the questions directed to Officer Miller regarding the box knife. Objections must be timely made and sufficiently specific to preserve error for appeal. Appellant's objection fails to preserve error. *Gutierrez v. State,* 628 S.W.2d at 57. Point of error five is overruled.

■ In his sixth point of error appellant asserts that the trial court erred in allowing the State to introduce testimony from Sergeant Gafford stating that he spoke with appellant after the shooting and that the conversation was tape-recorded. The record before us does not contain any reference to the content of the tape recorded conversation. Furthermore, testimony from Sergeant Gafford recalling that he had engaged in a conversation with appellant, not the tape recorded conversation itself, was introduced into evidence. However, we believe that it is not good practice for prosecutors to ask a witness if they had a conversation with a defendant if the conversation itself is not admissible. Nonetheless, we find that Sergeant Gafford's reference to the tape recorded conversation with defendant at the scene of the shooting was not error. Since Sergeant Gafford's answer to the State's questioning did not refer to the contents of appellant's statement, we do not find that the reference had any prejudicial impact on the jury. *Garcia v. State,* 683 S.W.2d 715, 718 (Tex.App.— Houston [14th Dist.] 1984 pet. ref'd). Point of error six is overruled.

In appellant's seventh point of error he contends the trial court erred in excluding Harvey Briley's testimony that in his opinion on the occasion in question there was a struggle between appellant and the complainant and that complainant's death occurred exactly like appellant's said it occurred, that is, accidentally. Mr. Briley attempted to qualify as an expert witness based on his previous experience as a Houston police officer. The main question before the jury was whether there was a struggle between complainant and appellant which resulted in an accidental shooting, or, whether appellant intentionally shot complainant.

Appellant's trial counsel employed Mr. Briley to investigate the case. Briley's investigation included talking to appellant and four other witnesses, all of whom testified at the trial. The other four witnesses included Floyd McDonald, Crime Laboratory Director for the City of Pasadena Police Department; Dr. Harminder Marula, Assistant Medical Examiner of Harris County; Leanor Marie Barber, a chemist with the Houston Police Department; and C.E. Anderson, Firearms Examiner for the Houston Police Department. Briley also examined the scene where the shooting of complainant occurred. He had McDonald examine the shirt appellant was wearing at the time of the shooting to determine

whether McDonald could detect any gunshot residue on the shirt. Briley looked at autopsy photos and read the offense report of the Houston Police Department.

After giving the above testimony, Mr. Briley was asked to state his opinion as to what took place between appellant and the complainant on the night of the shooting. The trial court excluded Mr. Briley's opinion testimony. Appellee then made a bill of exceptions containing in relevant part the following testimony by Mr. Briley:

Defense Counsel: Mr. Briley, what is your opinion as to what took place on September 2, 1986, from your investigation?

Mr. Briley: My opinion is that there was a struggle. And that was consistent with what happened was consistent with what was told me by Mr. Powers.

He told me what happened at the time of the incident. He went over everything. And after my examination of the evidence, it was my opinion that there was a struggle and that it happened the way that he told it here.

Defense Counsel: Those facts, you are basing your opinion on facts that were known to you prior to this trial. Is that correct?

Mr. Briley: That's correct.

Defense Counsel: In this particular case?

Mr. Briley: Yes.

Defense Counsel: Are you able to demonstrate how this particular instance happened based on your experience and your investigation?

Mr. Briley: I can demonstrate how it happeened (sic) as was told to me.

Defense Counsel: This would be consistent with the facts that you found?

Mr. Briley: Yes, it is.

Defense Counsel: Judge, again—

The Court: Counsel, I think you have gone far enough with your Bill, don't you?

Rule 702, Tex.R.Crim.Evid. became effective on September 1, 1986, and is applicable to this case. That rule provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

In deciding whether to admit expert testimony, the trial court is to determine two things: (1) whether the witness is qualified as an expert, and (2) whether scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue.

The provisions of Rule 702 do not appear to change prior law concerning the trial court's determination of these two things.

Before adoption of the Texas Rules of Criminal Evidence, the Texas law was clear that whether a witness offered as an expert possesses the required qualifications is a question which rests largely within the discretion of the trial court, and the decision to admit or exclude the proposed opinion testimony will not be disturbed unless a clear abuse of discretion is shown. *Steve v. State*, 614 S.W.2d 137, 139 (Tex.Crim. App.1981). Also under the law prior to September 1, 1986, when the jury is in possession of the same information as the witness, and the jury can fully understand the matter and draw the proper inferences and conclusions, the witness's opinion testimony is unnecessary and inadmissible. *Steve v. State*, 614 S.W.2d at 139.

We believe that under Texas Rules of Criminal Evidence 702–705, the trial court still has discretion in determining whether a witness is qualified to give an expert opinion and whether scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact issue. We hold that under the rules of criminal evidence the trial court's decision on those matters will not be disturbed on appeal in the absence of abuse of discretion.

In the instant case the prosecutor started to object to the opinion testimony of Mr. Briley, and the trial court said "Sustained" before the objection was stated. Then the

prosecutor stated that no predicate had been laid and that the witness Briley had not been qualified as an expert in the field of homicide. These objections were sustained by the trial court.

Mr. Briley's testimony concerning his qualifications to testify as an expert were as follows: He had been a police officer with the Houston Police Department for twenty-five years, five years as a patrol officer, eight years as a detective and twelve years as a lieutenant in the Internal Affairs Division. He had worked in the Burglary Division, Theft and Forgery Division and in Cargo Theft. As a lieutenant in the Internal Affairs Division he was a supervisor of all the investigators in Internal Affairs. His duties included reviewing all cases assigned to investigators, including shootings where police officers were involved. Normally he would go to the scene of the investigation on shooting cases. He testified he had investigated many shootings.

These qualifications testified to by Mr. Briley did not necessarily qualify him to state an expert opinion concerning whether appellant had intentionally or accidentally shot and killed his wife. We cannot say that the trial court abused its discretion in ruling that Mr. Briley had not been qualified as an expert in the field of homicide so as to give his opinion on the question of whether the shooting was intentional or accidental. There is another reason why the trial court did not abuse his discretion in excluding Mr. Briley's opinion testimony. We have thoroughly reviewed the record and are convinced that the jury was in possession of the same information as the witness Briley and the jury could fully understand the matter and draw its own inferences and conclusions concerning whether the shooting was accidental or intentional. Under the record in this case whether the shooting was intentional or accidental did not involve scientific, technical or other specialized knowledge that would have assisted the jury in understanding the evidence or in determining the fact in issue. Therefore, even though the trial court did not give that as a reason for

his ruling, his ruling was correct and we cannot say there was any abuse of discretion in the exclusion of the evidence. Appellant's seventh point of error is overruled.

In point of error eight, appellant asserts that the trial court erred in overruling appellant's motion for mistrial based on the prosecutor's reference to punishment for a collateral offense during his closing argument. Proper jury argument falls into one of four categories: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) response to the defendant's argument; or (4) a plea for law enforcement. *Landry v. State*, 706 S.W.2d 105, 111 (Tex.Crim.App.1985), *cert. denied*, 479 U.S. 871, 107 S.Ct. 242, 93 L.Ed.2d 167 (1986). Appellant asserts it was improper for the State to name and distinguish the four types of charges and to refer to the punishment on one of the lesser included offenses. While the prosecutor did specify the four charges, namely, murder, voluntary manslaughter, involuntary manslaughter and negligent homicide, the prosecutor did not refer to the punishment on negligent homicide. The record shows that the prosecutor did however tell the jury that negligent homicide is considered a class "A" misdemeanor. The jury was not told the punishment range for a class "A" misdemeanor. Appellant objected to the prosecutor furnishing this information to the jury and his objection was sustained. Moreover, the judge instructed the jury to disregard the prosecutor's statement. Where an objection is sustained and an instruction given to the jury to disregard the statement, all possible harm generally is removed. Furthermore, once a curative instruction has been given to the jury in response to improper jury arguments, a mistrial is required only when the remark is so inflammatory that the prejudicial effect cannot be removed by a timely admonition. *Johnson v. State*, 672 S.W.2d 26, 28 (Tex.App.—Houston [14th Dist.] 1984, no pet.); *Holloway v. State*, 525 S.W.2d 165, 169 (Tex.Crim.App.1975). We hold that the prosecutor's statements were not so inflammatory that their harmful effect could

not be cured. The trial court did not err when it denied appellant's Motion for Mistrial. Point of error eight is overruled.

■ In points of error nine and ten appellant asserts that the trial court committed error during the punishment phase of trial when the prosecutor 'discussed the range of punishment for capital murder cases and attempted to have the jury punish for a collateral offense. The prosecutor told the jury that after shooting complainant, appellant chased Mr. Johnson out of the bedroom window. The prosecutor then stated if appellant had killed Mr. Johnson, he would be guilty of capital murder, which carries a minimum sentence of life imprisonment.

It is well established that counsel may in argument draw from the facts in evidence all inferences that are reasonable, fair, and legitimate, and he will be afforded latitude without limitation in this respect so long as his argument is supported by the evidence and offered in good faith. *Ricondo v. State*, 657 S.W.2d 439, 448 (Tex.App.—San Antonio 1983, no pet.). The State cites *Lomas v. State*, 707 S.W.2d 566, 569 (Tex. Crim.App.1986), to support its argument that it was proper to discuss these facts with the jury. The State agrees that it would have been improper to simply point out the existence of a collateral offense and then request additional punishment for that collateral offense. However, the State asserts that it was proper to narrowly show that the collateral offense enhanced the gravity of the charged offense. We agree.

After shooting claimant, appellant fired several shots at Mr. Johnson and while pursuing him yelled "Where are you, you brave motherfucker?". Appellant shot Mr. Johnson's car tire to prevent him from leaving the scene. Appellant continued to pursue Mr. Johnson while he was running down the street. There was ample evidence presented at appellant's trial from which the jury could infer that appellant was chasing Mr. Johnson in order to shoot him. It was within the permissible bounds of proper closing argument for the State to allege that if Mr. Johnson had been shot and killed, appellant would have been on trial for capital murder.

Furthermore, the record shows that the State did not ask the jury to give additional punishment for the collateral offense but only to consider all of the factors surrounding the death of complainant and the ensuing chase of Mr. Johnson. Since the State did not request a lengthier sentence but merely asked the jury to consider the severity of the circumstances surrounding complainant's death we find the State committed no error. *Lomas v. State*, 707 S.W. 2d at 569. Points of error nine and ten are overruled.

The judgment of the trial court is affirmed.