TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00576-CR







Israel Yanez a/k/a/ Juan Miguel Yanez, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT


NO. 9268, HONORABLE JOHN L. PLACKE, JUDGE PRESIDING







A jury found appellant Israel Yanez guilty of aggravated sexual assault and assessed
punishment at imprisonment for life and a $10,000 fine. See Tex. Pen. Code Ann. § 22.021(West
Supp. 2002). By ten points of error, Yanez complains of errors in the admission of evidence, in the
jury charge, and in jury argument. We will overrule these contentions and affirm the conviction.


Background

The complainant testified that on the evening of June 6, 1999, she was riding her
bicycle on Knobbs Road near McDade when a station wagon approached her from behind and
stopped beside her. The two men in the car introduced themselves as Sam Hill (the driver) and Israel
Yanez. After chatting with the complainant for a few minutes, the men drove away. As they left,
the complainant noticed a bicycle in the luggage area of the station wagon. The complainant
resumed her ride in the growing darkness. A few minutes later, a man on a bicycle approached the
complainant from the direction in which the station wagon had traveled. The man collided with the
complainant, throwing her from her bicycle, then seized her in a headlock. The complainant
recognized this man as the Israel Yanez she had just met and she identified him at trial as the
appellant. Yanez threw the complainant to the ground and began to tear off her clothes. When she
fought back, Yanez choked and punched her. Yanez succeeded in pinning the complainant to the
ground, then penetrated her anus with his fingers. The complainant began to lose consciousness. 
At some point, Yanez threw her over a barbed wire fence. The complainant's hand became
entangled in the fence, cutting her palm. Eventually, the complainant heard another vehicle arrive
and screamed for help. Yanez fled.

Charles Stephens testified that he and his friends Seth Jewell and B. J. Mitchell were
driving down Knobbs Road when they noticed two bicycles lying in a ditch. They stopped and saw
a woman lying on the ground with a man sitting on top of her. Mitchell asked the man if he and the
woman needed help. The man said no. Stephens drove on, but was concerned that "something
wasn't right." After unsuccessfully attempting to contact the Department of Public Safety officer
who lived in McDade, Stephens and his friends returned to Knobbs Road. They found the
complainant, naked and calling for help, lying inside the barbed wire fence. They gave her a shirt,
put her in their pickup, and drove her to a friend's house in McDade, then summoned the police and
medical help. At trial, Mitchell and Jewell, but not Stephens, identified appellant Yanez as the man
they saw with the complainant.

Samuel Hill testified that he and a friend spent the afternoon and early evening of
June 6 with Yanez. Hill was driving Yanez home in his station wagon when they encountered a
young woman riding a bicycle on Knobbs Road. They stopped to speak to her, then continued on
their way. A minute or two later, Yanez asked Hill to stop. Yanez got out of the car, took his
bicycle, and walked away. Hill then drove home alone.

Michael Farris testified that he met Yanez around noon on June 6, when Yanez
purchased a car from Farris's mother's boyfriend. Yanez reappeared at the Farris residence between
10:00 and 11:00 that night, when he knocked on the door and asked Farris for a ride home. Yanez
was not wearing a shirt, seemed nervous, and was dirty and sweaty. His nose was bleeding and he
had a scratch on his neck. Farris drove Yanez to a trailer house on County Road 305. As Farris was
returning to his house, he noticed police and EMS vehicles parked at an acquaintance's house in
McDade. He stopped and made inquiries. When Farris learned what had happened on Knobbs
Road, he told a police officer that he had just given a ride to a man fitting the assailant's description. 
Farris agreed to take the police to Yanez's trailer.

At the trailer, the officers' knock was answered by Antonio Lopez. Lopez admitted
the officers, who found Yanez in the bathroom. Farris was asked to come inside the trailer, where
he identified Yanez as the man to whom he had earlier given a ride. Yanez was then arrested. 
Stephens, Jewell, and Mitchell were brought to the trailer a few minutes later and identified appellant
as the man they saw with the complainant on Knobbs Road.


Motion to suppress

By two points of error, Yanez contends the district court erred by overruling his
motion to suppress physical evidence on the ground that the search of the trailer violated his rights
under the United States and Texas constitutions. U.S. Const. amends. IV, XIV; Tex. Const. art. I,
§ 9. Specifically, Yanez argues that Antonio Lopez was not authorized to consent to the warrantless
search of the trailer. In his brief, Yanez does not identify the evidence he believes was unlawfully
seized as a result of the search. At trial, the only evidence he sought to suppress pursuant to the
motion was the testimony regarding his identification at the arrest scene by Farris, Stephens, Jewell,
and Mitchell.

When reviewing the ruling on a motion to suppress, we defer to the trial court's
factual determinations but review de novo the court's application of the law to the facts. See
Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Because the district court did not
make explicit findings of fact, we review the evidence in the light most favorable to the court's
ruling and assume the court made findings that are supported by the record and buttress its
conclusion. Carmouche v. State, 10 S.W.3d 323, 327-28 (Tex. Crim. App. 2000). 

Lopez testified that he had leased the trailer, but had since moved to another location
and given possession of the trailer to his daughter Lisa Rivera. Lopez said that he gave money to
his daughter each month for the rent. Rivera testified that she was living in the trailer with her two
minor sisters and Yanez. Rivera claimed to be paying the rent with Yanez's help and said that her
father did not have any authority or control over the premises. The owner of the trailer, Linda
Guerrero Valero, testified that Lopez signed a six-month lease for the trailer in January 1999, and
that he, and no one else, paid the rent each month. Valero had consented to Rivera moving into the
trailer with Lopez, but she said that Yanez was not authorized to live there and that she had ordered
him off the premises one week before the incident in question. (1)

Sergeant Jack Sparkman was one of the officers who went to the trailer on the night
of the assault. He testified, "I told [Lopez] that we were there because we had information that a
gentleman had been just dropped off at this house that we thought - who we believed had been
involved in an assault. And then Officer Woolridge asked him if we could come in and he said sure. 
And I said do you live here and he said yes, I do. I live here with my daughter." Sparkman said he
had no doubt that Lopez was authorized to admit the officers. The other police officers gave similar
testimony.

 A warrantless entry and search does not violate the Fourth Amendment if the officers
have consent. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). All persons having common
authority over the premises may properly consent to a search. United States v. Matlock, 415 U.S.
164, 171 (1974). "Common authority" rests on "mutual use of property by persons generally having
joint access or control for most purposes." Id. at 171 n.7. A third party may consent to a search
when the party has equal control over and equal use of the premises being searched. Becknell v.
State, 720 S.W.2d 526, 528 (Tex. Crim. App. 1986).

The district court could reasonably find from the evidence before it that Antonio
Lopez was the lessor of the trailer, that he paid the rent each month, and that he lived in the trailer
with his daughters. These findings support the legal conclusion that Lopez had common authority
over the trailer and could lawfully give his consent to the officers' entry and search. Points of error
seven and eight are overruled.



In-court identifications

Yanez urges that the complainant's in-court identification of him as her assailant was
tainted by a suggestive pretrial identification procedure. At the hearing on Yanez's motion to
suppress the identification testimony, the complainant testified that she was shown an array of
photographs at the sheriff's office four days after the assault. Due to the poor quality of the
photographs, she did not make an identification. She was then taken to another room where she
viewed a live lineup. She immediately identified Yanez.

A pretrial identification procedure may be so suggestive and conducive to mistaken
identification as to taint any subsequent in-court identification and render it inadmissible as a denial
of due process. Stovall v. Denno, 388 U.S. 293, 301-02 (1967); Barley v. State, 906 S.W.2d 27, 32-33 (Tex. Crim. App. 1995). A two-step analysis is used to determine the admissibility of an in-court
identification: (1) whether the pretrial identification procedure was impermissibly suggestive and
if so, (2) whether that suggestive process gave rise to a very substantial likelihood of irreparable
misidentification. Barley, 906 S.W.2d at 33 (citing Simmons v. United States, 390 U.S. 377, 384
(1968)). In carrying out this analysis, the totality of the circumstances of the particular case must
be considered. Loving v. State, 947 S.W.2d 615, 617 (Tex. App.--Austin 1997, no pet.).

Yanez does not indicate in his brief whether he considers the photo array or the lineup
or both to have been impermissibly suggestive, or why. The complainant testified that when shown
the photo array, she was told "to pick him out of the photos." But she also testified that she did not
remember being told that the person suspected of being her assailant was in the photo array, and in
any event, she did not identify Yanez's photograph. The complainant said that the officers made no
statements or comments to her regarding the persons in the lineup. We find no basis in the record
for concluding that either the photo array or the lineup was conducted in an impermissibly suggestive
manner. Point of error two is overruled.

Yanez also complains of in-court identifications by Charles Stephens, B. J. Mitchell,
and Michael Farris. He contends that these identifications were tainted by the witnesses having
previously identified Yanez as he sat in a police car outside the trailer after his arrest. On-the-scene
confrontations of this sort are routinely criticized for their suggestiveness, but they are not
impermissibly suggestive as a matter of law. Stovall, 388 U.S. at 302; Garza v. State, 633 S.W.2d
508, 512 (Tex. Crim. App. 1982) (op. on reh'g).

Although Yanez moved to suppress these in-court identifications on the ground that
they were tainted by the on-the-scene confrontation, this issue was neither addressed nor ruled on
at the pretrial hearing on the motion. At trial, Yanez did not object to Mitchell's in-court
identification of him as being the man he saw assaulting the complainant or to Farris's in-court
identification of him as being the man he gave a ride to on the night of the assault. He did object to
Stephens's in-court identification of him as the man he saw sitting in a police car outside the trailer,
but not on the ground that the identification procedure was unduly suggestive. (2) The contention that
these witnesses' in-court identifications were tainted by suggestive out-of-court identification
procedures was not preserved for review. Tex. R. App. P. 33.1. Points of error three, four, and five
are overruled.

Expert testimony

Yanez contends the district court erred by admitting Kathleen Smith's opinion
testimony. Smith, a registered nurse employed in the emergency room of an Austin hospital,
conducted the sexual assault examination of the complainant on the night of the incident. Smith
testified to her observations during the examination and opined that they were consistent with the
complainant's description of the assault. Specifically, Smith testified that a redness around the
complainant's throat was consistent with her report of being strangled; that the many scratches and
abrasions on the complainant's body were consistent with her report of having her clothes torn off
and being tangled in a barbed wire fence; that it is common for sexual assault victims to experience
tearing in the area of sexual penetration; and that a tear of the complainant's rectum was consistent
with her report of anal penetration. 

If scientific, technical, or other specialized knowledge will assist the trier of fact to
understand the evidence or to determine a fact in issue, a qualified expert may testify thereto in the
form of an opinion. Tex. R. Evid. 702. To be admissible under rule 702, expert testimony must be
both relevant and reliable. Kelly v. State, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992). Yanez
asserts that Smith's testimony was neither relevant nor reliable.

Evidence is relevant if it has any tendency to make the existence of a fact of
consequence to the cause of action more or less probable than it would be without the evidence. 
Tex. R. Evid. 401. As applied to expert testimony under rule 702, relevance requires that the expert
witness tie or relate the pertinent facts of the case to the subject of her testimony. Morales v. State,
32 S.W.3d 862, 865 (Tex. Crim. App. 2000); Jordan v. State, 928 S.W.2d 550, 555 (Tex. Crim. App.
1996). In this cause, the subject of Smith's testimony was the physical effects of assault, both sexual
and otherwise. She described her observations of the complainant on the night of the incident and
explained how the complainant's physical condition was consistent with the reported assault. 
Smith's testimony "fit" the facts of the case. Morales, 32 S.W.3d at 865. The district court did not
abuse its discretion by overruling Yanez's relevance objection.

Yanez argued at trial that Smith's opinion testimony was not supported by a scientific
theory. See Kelly, 824 S.W.2d at 573 (criteria for determining reliability of scientific evidence). 
This argument misapprehended the nature of Smith's testimony. While nursing is a scientific
profession in some respects, Smith's testimony in this cause was not based on scientific principles
or theory, but on technical or specialized knowledge. To determine the reliability of such expert
testimony, the appropriate questions are (1) whether the field of expertise is a legitimate one; (2)
whether the subject matter of the expert's testimony is within the scope of that field; and (3) whether
the expert's testimony properly relies on or utilizes the principles involved in the field. Nenno v.
State, 970 S.W.2d 549, 561 (Tex. Crim. App. 1998).

Smith testified that she is a certified emergency care nurse. She had also completed
her training for certification as a sexual assault nurse. Smith had conducted over four hundred sexual
assault exams during the five years preceding Yanez's trial. While this testimony was primarily
offered to show Smith's expertise, it also supports the conclusion that emergency and sexual assault
nursing are legitimate fields of expertise. There is no question that Smith's testimony was within
the scope of those fields. Smith stated that her testimony was "going to be based on my experience
of five years of doing sexual assault exams and being an emergency room nurse with other injuries. 
I have built my practice on experience." In other words, Smith's testimony properly utilized the
principles involved in the fields of emergency and sexual assault nursing. The district court did not
abuse its discretion by overruling Yanez's reliability objection. Point of error ten is overruled.


Lesser included offense

Yanez requested jury charges on the lesser offenses of sexual assault and attempted
sexual assault. Both were refused. By point of error one, Yanez contends the district court erred by
denying the requested instruction on the "attempt offense."

Sexual assault and attempted sexual assault are both lesser included offenses of
aggravated sexual assault. See Tex. Code Crim. Proc. Ann. art. 37.09(1), (4) (West 1981). Yanez
argues that testimony raised an issue as to whether the complainant was sexually penetrated, and thus
as to whether he was guilty only of attempted sexual assault.

Yanez refers us to the testimony of an emergency medical technician who said that
"the general impression that I got when I started talking to [the complainant] was that someone had
tried to rape her." The technician later testified that the complainant told her the assailant "put his
finger in her." Yanez also notes that the first police officer to speak to the complainant following
the assault indicated in his report that when he asked her if she had been sexually assaulted, the
complainant answered that she did not think so. At trial, the officer testified that the complainant
had not been told at that time that penetration of her anus by Yanez's finger would constitute sexual
assault. In her own testimony, the complainant explained that she thought the officer "was meaning
like intercourse. That's what I thought he was referring to."

Viewing this testimony in its entirety, and considering the record as a whole, we hold
that the jury could not rationally find that Yanez was guilty only of attempted sexual assault. See
Rousseau v. State, 855 S.W.2d 666, 673 (Tex. Crim. App. 1993). The testimony does not raise a
legitimate issue as to whether or not the complainant was sexually penetrated. Further, there is no
evidence that Yanez did not threaten or place the complainant in fear of imminent serious bodily
injury as alleged in the indictment. Tex. Pen. Code Ann. § 22.021(a)(2)(A)(ii), (iii) (West Supp.
2002). Yanez did not request a charge on attempted aggravated sexual assault, and does not contend
that he was entitled to one. Point of error one is overruled.


Third party consent

Yanez also complains that the district court erred by refusing to give an article 38.23
instruction with respect to Antonio Lopez's authority to consent to the search of the trailer. Tex.
Code Crim. Proc. Ann. art. 38.23(a) (West Supp. 2002). This statute provides that in any case in
which the issue is raised, the jury should be instructed to disregard evidence that it believes, or has
a reasonable doubt, was obtained in violation of the constitution or laws of Texas or the United
States. An article 38.23 instruction is required when there are factual disputes as to how the
evidence was obtained. Bell v. State, 938 S.W.2d 35, 48 (Tex. Crim. App. 1996).

In this cause, there was conflicting testimony regarding whether Lopez was living in
the trailer or merely visiting, whether Lopez or his daughter was the lessee, and whether Lopez or
his daughter paid the rent. These facts were relevant to the question of whether Lopez was
authorized to consent to the search of the trailer. We conclude that the court did err by refusing the
requested article 38.23 instruction.

We hold, however, that the error was harmless. As previously noted, Yanez sought
to suppress as the fruit of the search only the testimony regarding his identification by Charles
Stephens, B. J. Mitchell, and Michael Farris at the scene of his arrest. Thus, even if the jury had
resolved the factual disputes relevant to the legality of the trailer search in Yanez's favor and had
disregarded the identification testimony to which Yanez objected, it still would have had before it
the in-court identifications by Mitchell and Farris, as well as the in-court identifications by the
complainant and by Seth Jewell (to which Yanez did not object on any ground). Under the
circumstances, the denial of the article 38.22 instruction was not calculated to injure Yanez's rights. 
Tex. Code Crim. Proc. Ann. art. 36.19 (West 1981); Almanza v. State, 686 S.W.2d 157, 171 (Tex.
Crim. App. 1985) (op. on reh'g); see Atkinson v. State, 923 S.W.2d 21, 27 (Tex. Crim. App. 1996). 
Point of error nine is overruled.


Punishment stage argument

At the punishment stage, the State offered evidence by a police officer and the victim
regarding a sexual assault committed by Yanez in Minnesota in 1989. Then, during his closing
argument, the prosecutor told the jurors, "Send a message to [the complainant] and send a message
to [the earlier victim]. He has sentenced them to a lifetime of nightmares, reoccurring terror." 
Yanez objected that "it is improper to have this jury consider facts as to prior offenses in assessing
their punishment." This objection was overruled. The prosecutor added, over Yanez's continuing
objection, "[I]f you even have an inclination to feel sorry for that criminal sitting over there, think
of [the complainant]. Feel sorry for her. Think of [the earlier victim]. Feel sorry for her. Don't feel
sorry for him." Yanez urges that the prosecutor was erroneously allowed to encourage the jury to
assess additional punishment based on the earlier offense.

In the opinions on which Yanez relies, convictions were reversed because the
prosecutor explicitly asked the jury to assess additional punishment for a collateral offense for which
the defendant was not on trial. Lomas v. State, 707 S.W.2d 566, 568-70 (Tex. Crim. App. 1986)
(jury urged to "tack on" additional years for collateral misconduct); Brown v. State, 530 S.W.2d 118,
119 (Tex. Crim. App. 1975) (jury asked to assess ten years each for charged offense and two
collateral offenses). The prosecutor's argument in this cause was not comparable. He did not ask
the jury to assess extra punishment for the earlier offense, but merely called the jury's attention to
the fact that Yanez was a repeat sexual offender. A defendant's criminal record is a matter relevant
to punishment and may be considered by the jury in assessing punishment for the offense on trial. 
Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (West Supp. 2002); Fields v. State, 1 S.W.3d 687,
688 (Tex. Crim. App. 1999). Point of error six is overruled.

The judgment of conviction is affirmed.



 

 Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Puryear

Affirmed

Filed: January 25, 2002

Do Not Publish
1. The State does not challenge Yanez's standing, and we express no opinion on that issue.
2. As previously noted, Stephens did not identify Yanez at trial as the man he saw at the scene
of the assault.