# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00576-CR

**Israel Yanez a/k/a/ Juan Miguel Yanez, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT
### NO. 9268, HONORABLE JOHN L. PLACKE, JUDGE PRESIDING

A jury found appellant Israel Yanez guilty of aggravated sexual assault and assessed punishment at imprisonment for life and a $10,000 fine. *See* Tex. Pen. Code Ann. § 22.021(West Supp. 2002). By ten points of error, Yanez complains of errors in the admission of evidence, in the jury charge, and in jury argument. We will overrule these contentions and affirm the conviction.

## *Background*

The complainant testified that on the evening of June 6, 1999, she was riding her bicycle on Knobbs Road near McDade when a station wagon approached her from behind and stopped beside her. The two men in the car introduced themselves as Sam Hill (the driver) and Israel Yanez. After chatting with the complainant for a few minutes, the men drove away. As they left, the complainant noticed a bicycle in the luggage area of the station wagon. The complainant resumed her ride in the growing darkness. A few minutes later, a man on a bicycle approached the

complainant from the direction in which the station wagon had traveled. The man collided with the complainant, throwing her from her bicycle, then seized her in a headlock. The complainant recognized this man as the Israel Yanez she had just met and she identified him at trial as the appellant. Yanez threw the complainant to the ground and began to tear off her clothes. When she fought back, Yanez choked and punched her. Yanez succeeded in pinning the complainant to the ground, then penetrated her anus with his fingers. The complainant began to lose consciousness. At some point, Yanez threw her over a barbed wire fence. The complainant's hand became entangled in the fence, cutting her palm. Eventually, the complainant heard another vehicle arrive and screamed for help. Yanez fled.

Charles Stephens testified that he and his friends Seth Jewell and B. J. Mitchell were driving down Knobbs Road when they noticed two bicycles lying in a ditch. They stopped and saw a woman lying on the ground with a man sitting on top of her. Mitchell asked the man if he and the woman needed help. The man said no. Stephens drove on, but was concerned that "something wasn't right." After unsuccessfully attempting to contact the Department of Public Safety officer who lived in McDade, Stephens and his friends returned to Knobbs Road. They found the complainant, naked and calling for help, lying inside the barbed wire fence. They gave her a shirt, put her in their pickup, and drove her to a friend's house in McDade, then summoned the police and medical help. At trial, Mitchell and Jewell, but not Stephens, identified appellant Yanez as the man they saw with the complainant.

Samuel Hill testified that he and a friend spent the afternoon and early evening of June 6 with Yanez. Hill was driving Yanez home in his station wagon when they encountered a young

2

woman riding a bicycle on Knobbs Road. They stopped to speak to her, then continued on their way. A minute or two later, Yanez asked Hill to stop. Yanez got out of the car, took his bicycle, and walked away. Hill then drove home alone.

Michael Farris testified that he met Yanez around noon on June 6, when Yanez purchased a car from Farris's mother's boyfriend. Yanez reappeared at the Farris residence between 10:00 and 11:00 that night, when he knocked on the door and asked Farris for a ride home. Yanez was not wearing a shirt, seemed nervous, and was dirty and sweaty. His nose was bleeding and he had a scratch on his neck. Farris drove Yanez to a trailer house on County Road 305. As Farris was returning to his house, he noticed police and EMS vehicles parked at an acquaintance's house in McDade. He stopped and made inquiries. When Farris learned what had happened on Knobbs Road, he told a police officer that he had just given a ride to a man fitting the assailant's description. Farris agreed to take the police to Yanez's trailer.

At the trailer, the officers' knock was answered by Antonio Lopez. Lopez admitted the officers, who found Yanez in the bathroom. Farris was asked to come inside the trailer, where he identified Yanez as the man to whom he had earlier given a ride. Yanez was then arrested. Stephens, Jewell, and Mitchell were brought to the trailer a few minutes later and identified appellant as the man they saw with the complainant on Knobbs Road.

***Motion to suppress***

By two points of error, Yanez contends the district court erred by overruling his motion to suppress physical evidence on the ground that the search of the trailer violated his rights under the United States and Texas constitutions. U.S. Const. amends. IV, XIV; Tex. Const. art. I,

3

§ 9. Specifically, Yanez argues that Antonio Lopez was not authorized to consent to the warrantless search of the trailer. In his brief, Yanez does not identify the evidence he believes was unlawfully seized as a result of the search. At trial, the only evidence he sought to suppress pursuant to the motion was the testimony regarding his identification at the arrest scene by Farris, Stephens, Jewell, and Mitchell.

When reviewing the ruling on a motion to suppress, we defer to the trial court's factual determinations but review *de novo* the court's application of the law to the facts. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Because the district court did not make explicit findings of fact, we review the evidence in the light most favorable to the court's ruling and assume the court made findings that are supported by the record and buttress its conclusion. *Carmouche v. State*, 10 S.W.3d 323, 327-28 (Tex. Crim. App. 2000).

Lopez testified that he had leased the trailer, but had since moved to another location and given possession of the trailer to his daughter Lisa Rivera. Lopez said that he gave money to his daughter each month for the rent. Rivera testified that she was living in the trailer with her two minor sisters and Yanez. Rivera claimed to be paying the rent with Yanez's help and said that her father did not have any authority or control over the premises. The owner of the trailer, Linda Guerrero Valero, testified that Lopez signed a six-month lease for the trailer in January 1999, and that he, and no one else, paid the rent each month. Valero had consented to Rivera moving into the trailer with Lopez, but she said that Yanez was not authorized to live there and that she had ordered him off the premises one week before the incident in question.[1]

---

[1] The State does not challenge Yanez's standing, and we express no opinion on that issue.

Sergeant Jack Sparkman was one of the officers who went to the trailer on the night of the assault. He testified, "I told [Lopez] that we were there because we had information that a gentleman had been just dropped off at this house that we thought – who we believed had been involved in an assault. And then Officer Woolridge asked him if we could come in and he said sure. And I said do you live here and he said yes, I do. I live here with my daughter." Sparkman said he had no doubt that Lopez was authorized to admit the officers. The other police officers gave similar testimony.

A warrantless entry and search does not violate the Fourth Amendment if the officers have consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). All persons having common authority over the premises may properly consent to a search. *United States v. Matlock*, 415 U.S. 164, 171 (1974). "Common authority" rests on "mutual use of property by persons generally having joint access or control for most purposes." *Id*. at 171 n.7. A third party may consent to a search when the party has equal control over and equal use of the premises being searched. *Becknell v. State*, 720 S.W.2d 526, 528 (Tex. Crim. App. 1986).

The district court could reasonably find from the evidence before it that Antonio Lopez was the lessor of the trailer, that he paid the rent each month, and that he lived in the trailer with his daughters. These findings support the legal conclusion that Lopez had common authority over the trailer and could lawfully give his consent to the officers' entry and search. Points of error seven and eight are overruled.

***In-court identifications***

Yanez urges that the complainant's in-court identification of him as her assailant was tainted by a suggestive pretrial identification procedure. At the hearing on Yanez's motion to suppress the identification testimony, the complainant testified that she was shown an array of photographs at the sheriff's office four days after the assault. Due to the poor quality of the photographs, she did not make an identification. She was then taken to another room where she viewed a live lineup. She immediately identified Yanez.

A pretrial identification procedure may be so suggestive and conducive to mistaken identification as to taint any subsequent in-court identification and render it inadmissible as a denial of due process. *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967); *Barley v. State*, 906 S.W.2d 27, 32-33 (Tex. Crim. App. 1995). A two-step analysis is used to determine the admissibility of an in-court identification: (1) whether the pretrial identification procedure was impermissibly suggestive and if so, (2) whether that suggestive process gave rise to a very substantial likelihood of irreparable misidentification. *Barley*, 906 S.W.2d at 33 (citing *Simmons v. United States*, 390 U.S. 377, 384 (1968)). In carrying out this analysis, the totality of the circumstances of the particular case must be considered. *Loving v. State*, 947 S.W.2d 615, 617 (Tex. App.—Austin 1997, no pet.).

Yanez does not indicate in his brief whether he considers the photo array or the lineup or both to have been impermissibly suggestive, or why. The complainant testified that when shown the photo array, she was told "to pick him out of the photos." But she also testified that she did not remember being told that the person suspected of being her assailant was in the photo array, and in any event, she did not identify Yanez's photograph. The complainant said that the officers made no

statements or comments to her regarding the persons in the lineup. We find no basis in the record for concluding that either the photo array or the lineup was conducted in an impermissibly suggestive manner. Point of error two is overruled.

Yanez also complains of in-court identifications by Charles Stephens, B. J. Mitchell, and Michael Farris. He contends that these identifications were tainted by the witnesses having previously identified Yanez as he sat in a police car outside the trailer after his arrest. On-the-scene confrontations of this sort are routinely criticized for their suggestiveness, but they are not impermissibly suggestive as a matter of law. *Stovall*, 388 U.S. at 302; *Garza v. State*, 633 S.W.2d 508, 512 (Tex. Crim. App. 1982) (op. on reh'g).

Although Yanez moved to suppress these in-court identifications on the ground that they were tainted by the on-the-scene confrontation, this issue was neither addressed nor ruled on at the pretrial hearing on the motion. At trial, Yanez did not object to Mitchell's in-court identification of him as being the man he saw assaulting the complainant or to Farris's in-court identification of him as being the man he gave a ride to on the night of the assault. He did object to Stephens's in-court identification of him as the man he saw sitting in a police car outside the trailer, but not on the ground that the identification procedure was unduly suggestive.[2] The contention that these witnesses' in-court identifications were tainted by suggestive out-of-court identification procedures was not preserved for review. Tex. R. App. P. 33.1. Points of error three, four, and five are overruled.

*Expert testimony*

---

[2] As previously noted, Stephens did not identify Yanez at trial as the man he saw at the scene of the assault.

7

Yanez contends the district court erred by admitting Kathleen Smith's opinion testimony. Smith, a registered nurse employed in the emergency room of an Austin hospital, conducted the sexual assault examination of the complainant on the night of the incident. Smith testified to her observations during the examination and opined that they were consistent with the complainant's description of the assault. Specifically, Smith testified that a redness around the complainant's throat was consistent with her report of being strangled; that the many scratches and abrasions on the complainant's body were consistent with her report of having her clothes torn off and being tangled in a barbed wire fence; that it is common for sexual assault victims to experience tearing in the area of sexual penetration; and that a tear of the complainant's rectum was consistent with her report of anal penetration.

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a qualified expert may testify thereto in the form of an opinion. Tex. R. Evid. 702. To be admissible under rule 702, expert testimony must be both relevant and reliable. *Kelly v. State*, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992). Yanez asserts that Smith's testimony was neither relevant nor reliable.

Evidence is relevant if it has any tendency to make the existence of a fact of consequence to the cause of action more or less probable than it would be without the evidence. Tex. R. Evid. 401. As applied to expert testimony under rule 702, relevance requires that the expert witness tie or relate the pertinent facts of the case to the subject of her testimony. *Morales v. State*, 32 S.W.3d 862, 865 (Tex. Crim. App. 2000); *Jordan v. State*, 928 S.W.2d 550, 555 (Tex. Crim. App. 1996). In this cause, the subject of Smith's testimony was the physical effects of assault, both sexual

8

and otherwise. She described her observations of the complainant on the night of the incident and explained how the complainant's physical condition was consistent with the reported assault. Smith's testimony "fit" the facts of the case. *Morales*, 32 S.W.3d at 865. The district court did not abuse its discretion by overruling Yanez's relevance objection.

Yanez argued at trial that Smith's opinion testimony was not supported by a scientific theory. *See Kelly*, 824 S.W.2d at 573 (criteria for determining reliability of scientific evidence). This argument misapprehended the nature of Smith's testimony. While nursing is a scientific profession in some respects, Smith's testimony in this cause was not based on scientific principles or theory, but on technical or specialized knowledge. To determine the reliability of such expert testimony, the appropriate questions are (1) whether the field of expertise is a legitimate one; (2) whether the subject matter of the expert's testimony is within the scope of that field; and (3) whether the expert's testimony properly relies on or utilizes the principles involved in the field. *Nenno v. State*, 970 S.W.2d 549, 561 (Tex. Crim. App. 1998).

Smith testified that she is a certified emergency care nurse. She had also completed her training for certification as a sexual assault nurse. Smith had conducted over four hundred sexual assault exams during the five years preceding Yanez's trial. While this testimony was primarily offered to show Smith's expertise, it also supports the conclusion that emergency and sexual assault nursing are legitimate fields of expertise. There is no question that Smith's testimony was within the scope of those fields. Smith stated that her testimony was "going to be based on my experience of five years of doing sexual assault exams and being an emergency room nurse with other injuries. I have built my practice on experience." In other words, Smith's testimony properly utilized the

9

principles involved in the fields of emergency and sexual assault nursing. The district court did not abuse its discretion by overruling Yanez's reliability objection. Point of error ten is overruled.

***Lesser included offense***

Yanez requested jury charges on the lesser offenses of sexual assault and attempted sexual assault. Both were refused. By point of error one, Yanez contends the district court erred by denying the requested instruction on the "attempt offense."

Sexual assault and attempted sexual assault are both lesser included offenses of aggravated sexual assault. *See* Tex. Code Crim. Proc. Ann. art. 37.09(1), (4) (West 1981). Yanez argues that testimony raised an issue as to whether the complainant was sexually penetrated, and thus as to whether he was guilty only of attempted sexual assault.

Yanez refers us to the testimony of an emergency medical technician who said that "the general impression that I got when I started talking to [the complainant] was that someone had tried to rape her." The technician later testified that the complainant told her the assailant "put his finger in her." Yanez also notes that the first police officer to speak to the complainant following the assault indicated in his report that when he asked her if she had been sexually assaulted, the complainant answered that she did not think so. At trial, the officer testified that the complainant had not been told at that time that penetration of her anus by Yanez's finger would constitute sexual assault. In her own testimony, the complainant explained that she thought the officer "was meaning like intercourse. That's what I thought he was referring to."

Viewing this testimony in its entirety, and considering the record as a whole, we hold that the jury could not rationally find that Yanez was guilty only of attempted sexual assault. *See*

10

*Rousseau v. State*, 855 S.W.2d 666, 673 (Tex. Crim. App. 1993). The testimony does not raise a legitimate issue as to whether or not the complainant was sexually penetrated. Further, there is no evidence that Yanez did not threaten or place the complainant in fear of imminent serious bodily injury as alleged in the indictment. Tex. Pen. Code Ann. § 22.021(a)(2)(A)(ii), (iii) (West Supp. 2002). Yanez did not request a charge on attempted aggravated sexual assault, and does not contend that he was entitled to one. Point of error one is overruled.

### Third party consent

Yanez also complains that the district court erred by refusing to give an article 38.23 instruction with respect to Antonio Lopez's authority to consent to the search of the trailer. Tex. Code Crim. Proc. Ann. art. 38.23(a) (West Supp. 2002). This statute provides that in any case in which the issue is raised, the jury should be instructed to disregard evidence that it believes, or has a reasonable doubt, was obtained in violation of the constitution or laws of Texas or the United States. An article 38.23 instruction is required when there are factual disputes as to how the evidence was obtained. *Bell v. State*, 938 S.W.2d 35, 48 (Tex. Crim. App. 1996).

In this cause, there was conflicting testimony regarding whether Lopez was living in the trailer or merely visiting, whether Lopez or his daughter was the lessee, and whether Lopez or his daughter paid the rent. These facts were relevant to the question of whether Lopez was authorized to consent to the search of the trailer. We conclude that the court did err by refusing the requested article 38.23 instruction.

We hold, however, that the error was harmless. As previously noted, Yanez sought to suppress as the fruit of the search only the testimony regarding his identification by Charles

Stephens, B. J. Mitchell, and Michael Farris at the scene of his arrest. Thus, even if the jury had resolved the factual disputes relevant to the legality of the trailer search in Yanez's favor and had disregarded the identification testimony to which Yanez objected, it still would have had before it the in-court identifications by Mitchell and Farris, as well as the in-court identifications by the complainant and by Seth Jewell (to which Yanez did not object on any ground). Under the circumstances, the denial of the article 38.22 instruction was not calculated to injure Yanez's rights. Tex. Code Crim. Proc. Ann. art. 36.19 (West 1981); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see Atkinson v. State*, 923 S.W.2d 21, 27 (Tex. Crim. App. 1996). Point of error nine is overruled.

### *Punishment stage argument*

At the punishment stage, the State offered evidence by a police officer and the victim regarding a sexual assault committed by Yanez in Minnesota in 1989. Then, during his closing argument, the prosecutor told the jurors, "Send a message to [the complainant] and send a message to [the earlier victim]. He has sentenced them to a lifetime of nightmares, reoccurring terror." Yanez objected that "it is improper to have this jury consider facts as to prior offenses in assessing their punishment." This objection was overruled. The prosecutor added, over Yanez's continuing objection, "[I]f you even have an inclination to feel sorry for that criminal sitting over there, think of [the complainant]. Feel sorry for her. Think of [the earlier victim]. Feel sorry for her. Don't feel sorry for him." Yanez urges that the prosecutor was erroneously allowed to encourage the jury to assess additional punishment based on the earlier offense.

12

In the opinions on which Yanez relies, convictions were reversed because the prosecutor explicitly asked the jury to assess additional punishment for a collateral offense for which the defendant was not on trial. *Lomas v. State*, 707 S.W.2d 566, 568-70 (Tex. Crim. App. 1986) (jury urged to "tack on" additional years for collateral misconduct); *Brown v. State*, 530 S.W.2d 118, 119 (Tex. Crim. App. 1975) (jury asked to assess ten years each for charged offense and two collateral offenses). The prosecutor's argument in this cause was not comparable. He did not ask the jury to assess extra punishment for the earlier offense, but merely called the jury's attention to the fact that Yanez was a repeat sexual offender. A defendant's criminal record is a matter relevant to punishment and may be considered by the jury in assessing punishment for the offense on trial. Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (West Supp. 2002); *Fields v. State*, 1 S.W.3d 687, 688 (Tex. Crim. App. 1999). Point of error six is overruled.

The judgment of conviction is affirmed.

_____

Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Puryear

Affirmed

Filed:   January 25, 2002

Do Not Publish