

## NUMBER 13-12-00039-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

JOSHUA JERELL WILSON
A/K/A JOSHUA JERRELL WILSON,                    **Appellant,**

**v.**

THE STATE OF TEXAS,                    **Appellee.**

### On appeal from the Criminal District Court
### of Jefferson County, Texas.

## MEMORANDUM OPINION[1]

### Before Justices Rodriguez, Benavides, and Perkes
### Memorandum Opinion by Justice Perkes

Appellant, Joshua Jerell Wilson A/K/A Joshua Jerrell Wilson, appeals his

conviction for murder, a first-degree felony. *See* TEX. PENAL CODE ANN. § 19.02(b)(1)

(West 2011). A jury found appellant guilty, and the trial court assessed punishment at

---

[1] This case is before this Court on transfer from the Ninth Court of Appeals in Beaumont pursuant to an order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

ninety-nine years of confinement in the Texas Department of Criminal Justice, Institutional Division. By four issues, appellant argues that (1) the evidence was insufficient to support the conviction; (2) the trial court erred in denying his motion to suppress a photographic lineup that was impermissibly suggestive and that created a substantial likelihood of misidentification; (3) the trial court abused its discretion by admitting autopsy photographs over his rule 403 objection; and (4) the trial court erred in denying his right of confrontation by limiting his cross-examination of one of the State's witnesses.[2] We affirm.

## I. BACKGROUND[3]

Appellant was convicted for the murder of Hayward David Monceaux a/k/a "Howard-T." Howard-T was shot in the back of the head from about twelve to fifteen inches away while standing in a well-lit "breezeway" between apartments at the Louis Manor Apartments in Port Arthur, Texas.

Two witnesses, Eric Brisco and Irvrie Williams, testified to seeing a person flee from the scene of the crime. Brisco testified that at the time of the shooting he was taking some papers to a fellow church member who resided at the Louis Manor Apartments. Brisco testified that when he was "maybe two steps from [the church member's] door," he heard "like a loud pop." He looked to his left and saw Howard-T "fall." A dark-complected, African-American man with a full beard was about one or two feet away from the victim. Brisco was about four or five feet away from the shooting. He

---

[2] We have reorganized and restated appellant's issues for the sake of clarity.

[3] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

2

immediately fled, as did the man that he saw. On the day after the shooting, Brisco identified appellant in a photographic lineup as the man who fled the scene of the crime.

Irvrie Williams, Howard-T's cousin, testified that he was in a nearby apartment when he heard the gunshot. He had opened the apartment's bathroom window because he was about to smoke a cigarette, when he heard the gunshot. He looked out the window and saw Howard-T "fall" to the ground. An African-American person dressed in black fled from the scene.

Two other witnesses testified to seeing appellant at or near the apartment complex before the shooting. Raquel Ladet stated that "a couple days before" the shooting, she saw Howard-T and appellant exchanging "some words, like, not nice words" in the parking lot adjacent to her apartment. She noted that both men appeared visibly upset, but that appellant eventually left. Howard T's wife, Ashley Antoine, testified that appellant approached her earlier on the day of the shooting, asking where he could find Howard-T. She later identified appellant in a photographic lineup as the person who approached her.

Earnest Lamont Nelson testified that about three weeks after the shooting, and while he and appellant were both in jail, he heard appellant bragging about approaching Howard-T from behind and shooting him in the head at the Louis Manor Apartments. According to Nelson, appellant intimated that, during a prior incarceration, he heard "the name Howard-T and that he had been selling drugs and that he was going to make it his business or his goal whenever he got out to look for this person to do whatever he had to do with this person." Nelson stated further that appellant informed him that his motive

3

was to rob Howard-T and that he took some money and crack cocaine from Howard-T on the night he shot him.

## II.  SUFFICIENCY OF THE EVIDENCE

By his first issue, appellant contends that the evidence is insufficient to support his murder conviction.   We disagree.

### A.    Standard of Review

"The standard for determining whether the evidence is legally sufficient to support a conviction is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"   *Johnson v. State*, 364 S.W.3d 292, 293–94 (Tex. Crim. App. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original); *see Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010) (plurality op.).   The fact-finder is the exclusive judge of the credibility of witnesses and of the weight to be given to their testimony.   *Anderson v. State*, 322 S.W.3d 401, 405 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (citing *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008)).   Reconciliation of conflicts in the evidence is within the fact-finder's exclusive province.   *Id.* (citing *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000)).   We must resolve any inconsistencies in the testimony in favor of the verdict.   *Id.* (citing *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000)).

### B.    Discussion

Appellant argues that the evidence is insufficient because appellant did not confess and because no eyewitness testified to the murder.   He further contends that

4

"[a]ll that is known is that the defendant was in the vicinity earlier[,] until the prosecution call[ed] a witness who testifie[d] that the defendant admitted murdering the victim."[4]

The jury heard testimony that appellant admitted to committing the murder, and it was free to believe or disbelieve this testimony. In addition, the jury heard Brisco testify that he was in close proximity to the shooting when it occurred and that he saw appellant flee the crime scene immediately after the shooting. The jury also heard testimony that appellant was searching for Howard-T on the day of the shooting and that appellant and Howard-T were involved in a heated argument a few days before the shooting. We defer to the factfinder as the exclusive judge on the credibility of the witnesses, and resolve all inconsistencies in favor of the verdict. *See Anderson*, 322 S.W.3d at 405. We therefore conclude that the evidence is sufficient to support the verdict. *See Jackson*, 443 U.S. at 319. We overrule appellant's first issue.

### III. PRETRIAL PHOTOGRAPHIC LINEUP

By his second issue, appellant argues that the trial court erred in denying his motion to suppress the pretrial photographic lineup and in-court identifications. Specifically, he complains that the pretrial photographic lineup was impermissibly suggestive and created a substantial likelihood of irreparable misidentification because he was the only "person with a full, although light beard . . . ."[5]

---

[4] Appellant does not challenge the credibility of Nelson, the State's witness who testified to hearing appellant admit to the murder.

[5] We construe appellant's issue to include a challenge to the in-court identification based on appellant's reference to the "substantial likelihood of irreparable misidentification," a phrase associated with the frequent challenge that an in-court identification is tainted by an impermissibly suggestive pretrial photographic lineup. *See, e.g., Barley v. State*, 906 S.W.2d 27, 33 (Tex. Crim. App. 1995) (en banc). Appellant cites *Barley*, a case addressing a request to suppress in-court identifications, in support of his argument. This construction of appellant's argument corresponds to appellant's pretrial motion to suppress, which explicitly stated, "There is a substantial likelihood of misidentification of the Defendant at

## A.     Standard of Review

Pretrial photographic lineup issues are reviewed de novo.   *See Loserth v. State,* 963 S.W.2d 770, 772–73 (Tex. Crim. App. 1998); *Guzman v. State,* 955 S.W.2d 85, 88–89 (Tex. Crim. App. 1997).   The issue is a mixed question of law and fact that does not turn on an evaluation of credibility and demeanor.   *See Loserth*, 963 S.W.2d at 772; *Guzman*, 955 S.W.2d at 89.   Determining the admissibility of in-court identification involves a two-step analysis:   (1) whether the out-of-court identification procedure was impermissibly suggestive; and (2) whether that suggestive procedure gave rise to a very substantial likelihood of irreparable misidentification.   *Simmons v. United States*, 390 U.S. 377, 384 (1968); *Barley v. State*, 906 S.W.2d 27, 33 (Tex. Crim. App. 1995) (en banc).   Each case must be considered on its own facts, and the analysis requires an examination of the totality of circumstances surrounding the identification.   *Simmons*, 390 U.S. at 384–85.   Appellant must prove both elements by clear and convincing evidence.   *Barley*, 906 S.W.2d at 33–34.

## B.     Discussion

Appellant's challenge is directed solely at the composition of the photographic lineup.[6]   The photographic lineup consisted of six photographs of dark-complected, African-American men with close-cropped hair and some facial hair.   The photographs

---

trial as a result of the impermissible procedure."   Regardless, our analysis is the same; we must first consider whether the photographic lineup was impermissibly suggestive.   *Compare Barley*, 906 S.W.2d at 33 (addressing attempted suppression of in-court identification), *with Cain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010) (requiring de novo review for mixed questions of law and fact that "do not turn on credibility and demeanor" in reviewing a trial court's denial of the defendant's motion to suppress).

[6]   The manner in which the photograph lineup was presented has not been challenged on appeal. In that regard, witness testimony shows the lineup was not presented in a suggestive manner.

are all black and white, and three of the subjects have a white shirt and three have a black shirt.

Detective Herbert Otis of the Port Arthur Police Department was the officer who prepared and presented the photograph lineup to Brisco and Antoine. He testified that the photographs and the position of appellant's photograph in the lineup were generated by a computer program. He stated that he inserted appellant's social security number, and then he asked the computer to "match with similar photos and the computer automatically" brought up the other photographs. Detective Otis affirmed that, based on his training and experience, the initial return produced photographs that were the most similar to appellant's photograph that could be achieved with the available database in the computer program.

Without any hesitation or prompting by Detective Otis, Brisco and Antoine each identified appellant from the photographic lineup. According to Brisco, "when I seen the eyes in the photo lineup, I just, you know, immediately identified with it and I got really uneasy" because "I've had, you know, nightmares about these eyes." It is noteworthy that Brisco emphasized the eyes as being appellant's distinguishing characteristic in view of appellant's challenge that the photographic lineup was suggestive because of the alleged uniqueness of his beard.

In considering the alleged discrepancies between appellant's and the others' facial hair, we hold the alleged difference was not so great as to be impermissibly suggestive. *See Mallard v. State*, 661 S.W.2d 268, 277 (Tex. App.—Fort Worth 1983, no pet.) (holding photo array was not impermissibly suggestive even though defendant was the only participant who had facial hair); *see also Ramirez v. State*, No. 11-01-00230-CR,

7

2002 WL 32344501, at *2 (Tex. App.—Eastland July 25, 2002, no pet.) (mem. op., not designated for publication) (overruling as irrelevant defendant's contention that the other men appearing in the photographic lineup "lacked the distinctive facial hair pattern which he possessed"). All of the subjects had some form of light facial-hair growth. The fact that the other men did not have identical features to appellant's appearance does not invalidate the lineup. *See Dickson v. State*, 492 S.W.2d 267, 271 (Tex. Crim. App. 1973); *see also Chavez v. State*, No. 14-07-00244-CR, 2008 WL 516782, at *3 (Tex. App.—Houston [14th Dist.] Feb. 28, 2008, no pet.) (mem. op., not designated for publication). Neither due process nor common sense requires that pictures in a lineup be individuals whose every feature matches. *See Dickson*, 492 S.W.2d at 271. Physical discrepancies between individual photographs in a lineup are not inherently impermissibly suggestive. *See Williams v. State*, 675 S.W.2d 754, 757 (Tex. Crim. App. 1984); see also Stevenson v. State, No. 05-01-000974-CR, 2002 WL 826954, at *3 (Tex. App.—Dallas May 2, 2002, no pet.) (mem. op., not designated for publication).

Having held that the pretrial photographic lineup is not impermissibly suggestive, we need not address the second element regarding whether there was a very substantial likelihood of irreparable misidentification at trial. We overrule appellant's second issue.

## IV. ADMISSION OF AUTOPSY PHOTOGRAPHS

By his third issue, appellant challenges the trial court's admission of three autopsy photographs, State's Exhibits 25, 26, and 30, over his rule 403 objection. *See* TEX. R. EVID. 403. Appellant generally cites case authority, without application, regarding the mutilation/alteration of a victim so as to enhance the photograph's gruesomeness.

8

We review a trial court's determination on the admissibility of evidence for an abuse of discretion and will only reverse if the decision to admit or exclude the evidence was arbitrary and falls outside the "zone of reasonable disagreement." *Rodriguez v. State,* 203 S.W.3d 837, 843 (Tex. Crim. App. 2006); *see Williams v. State,* 301 S.W.3d 675, 690 (Tex. Crim. App. 2009). Rule 403 provides that evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." TEX. R. EVID. 403. When performing a rule 403 analysis, the trial court must consider "the host of factors affecting probativeness . . . and balance those factors against the tendency, if any, that the photographs have to encourage resolution of material issues on an inappropriate emotional basis." *Salazar v. State*, 38 S.W.3d 141, 152 (Tex. Crim. App. 2001) (quoting *Ladd v. State*, 3 S.W.3d 547, 548 (Tex. Crim. App. 1999)).

In considering the admissibility of photographs, we consider several factors, including, without limitation, the number and size of the photographs, whether they are black and white or color, their gruesomeness, the detail shown, the availability of other means of proof, the unique circumstances to the case, and "whether the body has been altered since the crime in some way that might enhance the gruesomeness of the photographs to the appellant's detriment." *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006) (citing *Narvaiz v. State*, 840 S.W.2d 415, 429 (Tex. Crim. App. 1992)); *Santellan v. State*, 939 S.W.2d 155, 172 (Tex. Crim. App. 1997) (en banc). Autopsy photographs are generally admissible unless they depict mutilation caused by the autopsy itself. *Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002) (en banc); *Rojas v. State*, 986 S.W.2d 241, 249 (Tex. Crim. App. 1998).

9

All three of the complained-of photographs are autopsy photos showing the back of the victim's head. The first photo shows the bullet's entry point, but the bullet hole is difficult to see because the victim's hair is covering the site of the wound. The second photo is a similar picture, but a small portion of the victim's hair has been shaved around the bullet's entry point, so as to better expose the bullet hole in the back of the victim's head. Both photos focus on the entrance wound and are not particularly gruesome.

The third picture is a photo of the victim's interior cranial cavity, which has been opened to expose bullet's pathway through the brain. With respect to this photo, the trial court did inform the State that it was "very concerned about the photograph that is gruesome," but the court then allowed the State an opportunity to elaborate on its relevance before making a ruling. Doctor Tommy Brown, the Jefferson County forensic pathologist, testified about the entrance wound and the trajectory of the bullet, after which the trial court determined the probative value of the photograph outweighed its prejudicial effect and admitted it into evidence. Although this photo showed the victim's dissected cranium, it directly corresponded to Dr. Brown's testimony regarding the bullet's entrance and trajectory and the cause of death. *See Salazar*, 38 S.W.3d at 151–52; *see also Chamberlain v. State*, 998 S.W.2d 230, 237 (Tex. Crim. App. 1999) (en banc) ("Visual evidence accompanying testimony is most persuasive and often gives the factfinder a point of comparison against which to test the credibility of the witness and the validity of his conclusions").

The photos are highly probative of the manner of the death. The three 8x10 photos were used in progression, so as to explain where and how the bullet entered the body; the distance traveled, trajectory, and path of the bullet; the location where the bullet

10

fragments came to rest in the victim's head; and the mechanism of death. The trial court's admission of the photograph, after considering Dr. Brown's correlative testimony, was not outside the "zone of reasonable disagreement." *See Rodriguez,* 203 S.W.3d at 843. Moreover, the manner of presentation left no danger the jury would attribute the autopsy incision to appellant's conduct. *See Shuffield*, 189 S.W.3d at 787.

We conclude the probative value of the autopsy photos is not substantially outweighed by the danger of unfair prejudice or the cumulative or misleading nature of the evidence. The trial court did not abuse its discretion by refusing to exclude these photographs. We overrule appellant's third issue.

## V. CONFRONTATION RIGHT

By his fourth issue, appellant argues that the trial court erred by limiting his cross-examination of Dr. Brown. Specifically, appellant's counsel asked Dr. Brown whether he observed a tattoo on the victim that said, "Louis Manor 14th Street G." The trial court sustained the State's objection to the question, and appellant contends that the trial court's ruling violated his confrontation rights under the federal and state constitutional right to confront witnesses. *See* U.S. CONST. amends. VI; TEX. CONST. art. 1, § 10.

During cross-examination, the State objected to the question's relevancy and because it "clearly desired [sic] to inflame the jury against the deceased, and it's prejudicial." Appellant responded by informing the trial court, "I'm merely trying to show how meticulous the doctor was in his external examination . . . ." Later, the trial court held a hearing on a bill of exception, during which appellant contended that by sustaining the State's objection, the trial court improperly limited appellant's cross-examination.

11

Appellant reiterated that his only intent underlying the questions was to elicit "the procedures that [Dr. Brown] used to arrive at the conclusion that he made that this was death due to a gunshot wound of the head . . . ." The trial court responded:

> [I]n addition to the Court's rulings [sustaining the State's objection], the Court under Rule 403 is going to additionally find that . . . any probative value was substantially outweighed by the danger of unfair prejudice and needless presentation as well of [sic] cumulative evidence as this Court finds that [the State's] cross-examination had effectively addressed that area and you had explored that area thoroughly without needing, this Court felt, the presentation of substantially prejudicial information concerning tattoos, which included what this Court drew a fair inference relation to [sic] a tattoo involving something that purported to reflect the deceased may have been affiliated with a gang.

## A.    Applicable Law and Standard of Review

"A primary interest secured by the Confrontation Clause is the right of cross-examination." *Lopez v. State*, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000) (citing *Davis v. Alaska*, 415 U.S. 308 (1974)). Confrontation Clause issues are weighed on a case-by-case basis, and a trial court must balance the probative value of proposed evidence against the risk that admission might entail. *See id.* (citations omitted). The trial court enjoys broad discretion in imposing reasonable limits on cross-examination to avoid harassment, prejudice, confusion of the issues, endangering the witness, and the injection of cumulative or collateral evidence. *See id.* The trial court exceeds its discretion "only when it prohibits a defendant from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness." *Lagrone v. State*, 942 S.W.2d 602, 613 (Tex. Crim. App. 1997) (en banc) (citing *Moody v. State*, 827 S.W.2d 875, 891 (Tex. Crim. App. 1992)). We review the trial

12

court's decision to limit cross-examination under an abuse of discretion standard. *Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009).

## B. Discussion

The trial court did not abuse its discretion. The information sought did not involve "a prototypical form of bias" by Dr. Brown, but rather potentially prejudicial information about the murder victim. Limiting prejudicial information during cross-examination is within the broad discretion of the trial court. *See Lopez,* 18 S.W.3d at 222. Moreover, appellant failed "to show the relevancy of the questions," as required of the proponent of a vein of cross-examination. *See Carpenter v. State*, 979 S.W.2d 633, 634–35 (Tex. Crim. App. 1998) (en banc); *see also Arroyo v. State*, 259 S.W.3d 831, 835 (Tex. App.—Tyler 2008, no pet.). Appellant provided no "causal connection" between the presence of a particular tattoo, which coincidentally sounded gang-related, and the credibility of Dr. Brown or the thoroughness of his examination. The preclusion of cross-examination regarding a potentially prejudicial tattoo did not preclude appellant's ability to otherwise impeach Dr. Brown or challenge the thoroughness of his forensic examination. We overrule appellant's fourth issue.

## VI. CONCLUSION

We affirm the trial court's judgment.

GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
18th day of April, 2013.

13